SCHOOL COMMITTEE OF BOSTON *vs.* JOHN P. REILLY & others.

Suffolk. May 4, 1972. — July 14, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Equity Jurisdiction,* Specific performance. *Municipal Corporations,* Collective bargaining. *Public Board. Equity Pleading and Prac- tice,* Parties, Decree, Answer.

G. L. c. 149, §§ 178G-178N, dealing with collective bargaining by municipal employees, and the specific provisions of § 178M mak- ing strikes by municipal employees unlawful and § 180 providing a criminal penalty for strikes did not preclude injunctive relief against members of a striking teachers union who had agreed, in their collective bargaining agreement, not to "engage in, insti- gate, or condone any strike." [337–339]

Naming of a municipal school committee, rather than its individual members, as plaintiff in a bill in equity seeking injunctive relief against members of a striking teachers union did not deprive the trial court of jurisdiction for want of a proper party plaintiff. [339–340]

Defendant members of a striking teachers union who failed to file a timely answer to a bill in equity seeking injunctive relief against the strike were not entitled to a hearing on the merits of the bill at a time when the trial court found the defendants guilty of crim- inal contempt for violating a preliminary injunction against the strike, but it was error for the trial court to enter a final decree

as a result of the contempt hearing without giving the defendants notice and an opportunity to be heard on the form of the final decree. [340–342]

BILL IN EQUITY filed in the Superior Court on March 23, 1970.

Certain matters, including a contempt petition, were heard in the Superior Court by *Kalus,* J.

*Albert L. Goldman (John F. McMahon* with him) for the defendants.

*Edith W. Fine,* Assistant Corporation Counsel, for the plaintiff.

QUIRICO, J. In this equity suit arising out of the 1970 strike by public school teachers, the School Committee of Boston (Committee) sought injunctive and other relief against the members of the Boston Teachers Union, Local 66, American Federation of Teachers, AFL-CIO (the Union), and its president and eight other officers. The bill alleged in substance that the defendants were engaged in an unlawful strike in violation of G. L. c. 149, § 178M,[1] and their collective bargaining agreement with the Committee,[2] and that the continuation of the strike would cause irreparable harm to the Committee. On March 23, 1970, the day the bill was entered, the authorized attorney for the defendants filed a general appearance for them, thus submitting them to the jurisdiction of the court without the necessity of service of process on them. Rule 19 of the Superior Court (1954). *Ingersoll* v. *Ingersoll,* 348 Mass. 209, 210. On March 25, 1970, a judge of the Superior Court issued a preliminary injunction which provided that "the de-

[1] General Laws c. 149, § 178M, inserted by St. 1965, c. 763, § 2, provides: "It shall be unlawful for any [municipal] employee to engage in, induce, or encourage any strike, work stoppage, slowdown or withholding of services by such employees."

[2] Article XII of the collective bargaining agreement in effect for the 1969–1970 school year provided in part: "The Union, in consideration of the value of this Agreement . . . will not engage in, instigate, or condone any strike, work stoppage or any concerted refusal to perform normal work duties on the part of any employee covered by this Agreement."

fendants, for whom counsel have appeared in this suit . . . are enjoined and restrained from engaging in any strike, partial strike, or any concerted refusal to perform services for . . . [the Committee], until further order of Court."

Subsequently, on May 1, 1970, the Committee filed a "Petition for Attachment for Contempt" alleging that ten members of the Union, who were not individually named as defendants in the original bill, had violated the court's preliminary injunction. The court, of its own motion, twice amended this contempt petition to add as parties defendant both the Union and the defendants individually named in the original bill.

A hearing on the contempt petition was held on May 4 and 5, 1970, and on May 6, 1970, the judge issued a document entitled "Findings, Order and Decree in re Petition for Contempt" in which he found "beyond a reasonable doubt that the . . . [defendants] have and are presently with other members of their association, too numerous to be joined as parties, engaged in the criminal activity of striking. Furthermore, the . . . [defendants], with others, have compounded their illegal conduct by intentionally, wilfully, and contemptuously violating the mandate of this court, prohibiting them from this very activity." Consequently the judge found all of the defendants named in the contempt petition guilty of criminal contempt of court. The defendant Reilly, the Union's president, was sentenced to thirty days in the common jail; the eight other named defendants as representatives of the Union were fined $500 each; [3] and the Union was ordered to pay to the city of Boston $1,000 a day for each

---

[3] The court's order provided: "The other eight individual . . . [defendants] named in the amended bill of complaint are ordered to pay $500 each to the City of Boston on or before Friday, May 15, 1970, in punishment for said contempt. . . . Boston Teachers Union, Local 66, is ordered to pay to the City of Boston the sum of $4,000 on or before Friday, May 15, 1970, in punishment of said contempt. Payment of the total sum of $4,000 to the City of Boston by one or all of said . . . [defendants], including the . . . Union, on the foregoing contempts, shall constitute full compliance with the aforementioned order."

day that the strike continued from the date of the court's order. This document included an order that a final decree be entered *permanently enjoining* the defendants "from engaging in a work stoppage or withholding of their services from the City of Boston, or engaging in or inducing or encouraging the withholding of services by the teachers of the Boston School Department."

The defendants appeal on several grounds which we consider seriatim.

1. *Jurisdiction of the Superior Court.* On the day the judge entered the preliminary injunction the defendants filed a plea to the jurisdiction of the Superior Court claiming: (1) that no civil remedy exists; (2) that the bill seeks equitable enforcement of a criminal statute; (3) that the plaintiff has no standing; and (4) that the plaintiff has an adequate remedy at law. This plea was overruled, and the defendants duly filed a notice of appeal. They urge the following arguments on this point.

(a) The defendants first argue that the exclusive remedy for the asserted violations of G. L. c. 149, § 178M, is a fine, as provided in § 180 of that chapter,[4] and that the Superior Court thus lacked jurisdiction to issue injunctive relief. In support of this argument the defendants rely heavily on statements appearing in *Commonwealth* v. *Stratton Fin. Co.* 310 Mass. 469, in which it was said (at 472) that suits to enforce criminal statutes by injunction lie "outside the ordinary course of equity jurisdiction with which we are familiar in this Commonwealth," and further (at 473), that the trend of our cases "is hostile to the development of a 'criminal equity.'" However, the court in that case expressly noted (at 474) : "We need not decide that there can never be a case, beyond the now recognized instances, in which an injunction might be proper in aid of a criminal statute in the absence of an express provision conferring the power to grant one. Some occasion of peculiar urgency

---

[4] General Laws, c. 149, § 180, provides: "Whoever violates a provision of this chapter for which no specific penalty is provided shall be punished by a fine of not more than one hundred dollars."

may possibly arise." Similarly, in the instant case we need not determine whether a strike by a municipality's teachers presents an "occasion of peculiar urgency," because the circumstances of this case afford an additional ground for the issuance of an injunction.

In addition to relying upon the provisions of G. L. c. 149, the Committee sought specific enforcement of art. XII of its collective bargaining agreement with the Union whereby the Union covenanted not to "engage in, instigate, or condone any strike." It is well settled that, where the requirements for injunctive relief are met (see *Kenyon* v. *Chicopee*, 320 Mass. 528, 534) such relief may be invoked to enforce a contract, particularly where the covenant to be enforced is negative in nature.[5] Since, "[w]hen the bill was brought the . . . [collective bargaining agreement] was in force, . . . equity properly took jurisdiction to hear the case on the application for injunctive relief." *Rooney* v. *Weeks*, 290 Mass. 18, 26.

We reject the defendants' argument that the enactment of G. L. c. 149, §§ 178G–178N, completely displaced all previous common law remedies. The only authority cited for this proposition is the statement in *School Comm. of Lowell* v. *Mayor of Lowell*, 265 Mass. 353, 356, that "where a statute has been enacted seemingly intended to cover the whole subject to which it relates, including a remedy for its infraction, other provisions of the common law, including such as are remedial in nature, are thereby superseded." However, the court in that case went on to stress (at 357) that "[t]he duty which the petitioners seek to have enforced is wholly the creature of statute. It does not exist at common law. The same statute, which creates the duty, provides the remedy for breach of that duty." Here the duty sought

---

[5] See *Lumley* v. *Wagner*, 1 De G., M. & G. 604; *Singer Sewing-Mach. Co.* v. *Union Button-Hole & Emboidery Co.* 22 Fed. Cas. (No. 12,904) 220, 221–222 (D. Mass.); *Butterick Pub. Co.* v. *Fisher*, 203 Mass. 122, 130–131; *Chandler, Gardner & Williams, Inc.* v. *Reynolds*, 250 Mass. 309, 316. See also, as to the injunctive enforcement of implied negative covenants, *Tobin* v. *Cody*, 343 Mass. 716; *Cap's Auto Parts, Inc.* v. *Caproni*, 347 Mass. 211.

to be enforced is contractual in nature and is not "wholly the creature of statute." Such a provision against work stoppages could have been included in the contract even absent any statutory restriction on work stoppages. There is nothing in the enactment of St. 1965, c. 763, § 2, adding §§ 178G–178N to c. 149, which would warrant the conclusion that this enactment was intended to restrict previously existing common law remedies for breach of contract in the employer-employee context.

(b) Secondly, the defendants contend that the Superior Court lacked jurisdiction because the "School Committee of the City of Boston, named as the plaintiff, was not a proper party to bring this suit. In part this argument consists of an attack upon the Committee's standing to enforce the provisions of G. L. c. 149. Since we view this case as an equity suit to enforce art. XII of the collective bargaining agreement, we do not deal with this aspect of the defendants' argument.

Alternatively, however, the defendants argue that the Committee (as opposed to its individual members or a majority thereof) was not a proper party to bring such a suit. In support of this contention the defendants argue that school committees are not corporate entities for purposes of suing and being sued. On the view we take of this issue it is unnecessary to discuss the corporate powers of the Committee. The defendants recognize that all of the individual members of the Committee, or a majority thereof, may bring suit on behalf of the Committee. That being so, but for the formal omission of the names of the individual members of the Committee, there would be no question as to the propriety of this suit.[6] Where, as in the instant case, the group in question is a defined public body with a small and readily ascertainable membership, asserting a common, unified position in the enforcement of public rights, there is no legal bar to referring collectively to the individual mem-

---

[6] It should be noted that the members of the Committee did not have to sign the bill since, under G. L. c. 214, § 15, a party's attorney may sign the bill, as was done in this case.

bers of the public body by its statutory title. We there-
fore hold that the individual members of the Committee
were properly before the court on a bill which referred to
them collectively as the "School Committee of the City of
Boston." [7]

Our holding is not intended to affect the long-standing
requirement of naming representative plaintiffs or de-
fendants in cases involving unincorporated voluntary
associations and similar groups whose exact member-
ship, in terms of identity and numbers, may be difficult
to define. Nor is it intended to apply to cases involving
suits between conflicting factions of the same body or
group, whether public or private.

2. *Entry of a Final Decree after the Contempt Hear-
ing.* As indicated earlier, in his "Findings, Order and
Decree in re Petition for Contempt," after finding the
defendants guilty of criminal contempt, the judge or-
dered the entry of a final decree permanently enjoining
all defendants "from engaging in a work stoppage or
withholding of their services from the City of Boston, or
engaging in or inducing or encouraging the withholding
of services by the teachers of the Boston School Depart-
ment." It does not appear from the record that a sep-
arate final decree was ever entered. However, the par-
ties have treated this portion of the judge's "Findings,
Order and Decree in re Petition for Contempt" as a
final decree. The defendants argue that it was improper
for the judge to enter a final decree as a result of the con-
tempt proceedings because they had no notice or oppor-
tunity to be heard on the form of such a decree. We
agree.

It should be noted at the outset that the defendants in
this particular case were not necessarily entitled, as they
contend, "to a trial on the issues in the injunction pro-
ceeding." Early in the case they filed, through counsel,

---

[7] This holding is in harmony with the rationale of G. L. c. 228,
§ 14, which authorizes the continued prosecution of a pending suit by
the successor to a public officer without the necessity of a formal amend-
ment to the pleadings. See *Commissioner of Admn.* v. *Kelley,* 350
Mass. 501, 502.

a "Motion to File Pleadings Separately" requesting permission to file demurrers and answers at a later time. This motion was denied by the trial judge, thus requiring them to file their answer with their special pleas, and precluding the filing of an answer after the filing of such pleas, except by leave of court. Rule 28 of the Superior Court (1954).

On March 25, 1970, the defendants filed a motion and several special pleas, which were all subsequently denied, but they filed no answer at that time. Later, on May 1, 1970, the defendants filed a motion for leave to file an answer and demurrer, but it does not appear that any action was ever taken on that motion. It thus appearing that no timely answer was ever filed by the defendants, the case was ripe for the entry of an interlocutory decree taking the substantive allegations of the bill for confessed, but no such decree was entered. On this state of the pleadings, the defendants were not entitled to a hear-. ing on the merits of the bill at the time of the contempt hearing.

However, irrespective of the effect of their failure to file an answer upon their right to a hearing on the merits, the defendants were entitled to be heard on the question of the form of the final decree, and absent notice and an opportunity to be heard on that subject it was error to enter a final decree as a result of the hearing on the contempt petition. *Blanchard* v. *Cooke*, 144 Mass. 207, 218. *Cosmopolitan Trust Co.* v. *Golub*, 252 Mass. 574, 579. "Upon proceedings for contempt it is the generally accepted rule that the only inquiry is whether the court granting the injunction had jurisdiction of the subject matter and the parties, and whether the order has been violated. The merits of the original cause are not involved and are not open for examination." *Irving & Casson-A. H. Davenport Co.* v. *Howlett*, 229 Mass. 560, 562. See *Prenguber* v. *Agostini*, 294 Mass. 491, 494–495; *Crystal, petitioner*, 330 Mass. 583, 588.

For the purpose of this opinion, we treat the following language used by the judge in his "Findings, Order and

Decree in re Petition for Contempt" filed on May 5, 1970, as a final decree, as did the parties: "All . . . [defendants] are hereby permanently enjoined and restrained from engaging in a work stoppage or withholding of their services from the City of Boston, or engaging in or inducing or encouraging the withholding of services by the teachers of the Boston School Department." The decree contained in the quoted language is reversed and the case is remanded to the Superior Court for further proceedings in accordance with this opinion if any of the parties desire the entry of a final decree. By virtue of this action we do not reach the additional questions argued by the parties concerning the final decree, including the question whether the controversy has become moot. See *Mullholland* v. *State Racing Commn.* 295 Mass. 286, 289; *Hubrite Informal Frocks, Inc.* v. *Kramer*, 297 Mass. 530, 533.

.  3. *Conclusion.* We affirm (a) the interlocutory decree of March 25, 1970, by which the defendants "are enjoined and restrained from engaging in any strike, partial strike, or any concerted refusal to perform services for . . . [the Committee], until further order of Court"; (b) the interlocutory decree of March 26, 1970, overruling the defendants' Plea to Jurisdiction; and (c) all other rulings, orders and decrees from which the defendants have appealed except the final decree which we have reversed above.

*So ordered.*