James W. KIRBY

v.

PLANNING BOARD OF REVIEW OF
the TOWN OF MIDDLETOWN

v.

PECKHAM BROS. CO., INC.

92–524–Appeal.

Supreme Court of Rhode Island.

Nov. 26, 1993.

Bradford Gorham, Gorham & Gorham, Providence, for plaintiff.

Turner C. Scott, Michael Miller, Miller, Scott, Howe & Kelly, Jeremiah Lynch, III, Stephen Haire, Newport, for defendant.

## OPINION

LEDERBERG, Justice.

This litigation arises from the decision of the town of Middletown's Planning Board of Review (board) to reject the subdivision plat plan submitted by James W. Kirby (Kirby). Kirby appealed the decision. The Superior Court, sitting without a jury, entered a judgment sustaining his appeal and reversing the board's decision. The board and Peckham Bros. Co., Inc. (Peckham) appeal the judgment of the Superior Court.

The central issue on appeal is whether the Superior Court erred in concluding that article 8, section 801, of the Middletown Rules and Regulations Regarding the Subdivision of Land (Middletown Subdivision Rules and Regulations) did not require the street system in Kirby's proposed subdivision to extend to land abutting the subdivision. The board rejected Kirby's plan because the layout of its street plan did not extend to abutting land. We are of the opinion that the board's decision was correct, and we reverse the judgment of the Superior Court.

## I

Kirby is the owner of lot No. 17 on tax assessor's plat No. 126 in the town of Middletown. On or about June 28, 1989, Kirby proposed a six-lot subdivision of his property, with five of the lots to be established initial-

ly.[1] In a letter dated July 21, 1989, the Middletown Planning Board denied Kirby's proposed subdivision on the grounds that it "did not conform with the *Rules and Regulations for the Subdivision of Land (RRSOL) 1980 (revised June 20, 1984)*." Kirby filed a timely appeal to the town planning board of review.

In a decision dated August 6, 1990, the board denied the appeal. Relying, in part, upon section 801 of the Middletown Subdivision Rules and Regulations, the board found that public convenience and welfare would not be furthered by allowing Kirby to establish a subdivision whose road system did not connect to the abutting property. The board interpreted section 801 as requiring "streets within a proposed subdivision [to] project to abutting land."

On August 16, 1990, Kirby appealed to the Superior Court.[2] On September 17, 1990, Peckham, the owner of land that abuts Kirby's, moved to intervene, and on or about October 1, 1990, the motion was granted. In a decision filed September 30, 1992, the trial justice reversed the board. He reasoned that because the properties abutting Kirby's proposed subdivision had been subdivided, the streets within the proposed subdivision were not required to project to abutting property lines. Consequently, the trial justice determined that the board had exceeded its authority when it denied approval on the grounds that the proposed subdivision did not extend streets to the abutting property. In response, Peckham filed the instant appeal.

1. Kirby's plan for a six-lot subdivision is outlined in bold below. His subsequent four-lot plan included the street system indicated by the broken line at lots # 3 and # 4.

2. By the time the Superior Court heard the instant case, Kirby had submitted a revised subdivision proposal to the board. This revised plan showed only four lots but contained a similar street system. The board also rejected this revised plan and Kirby filed a timely appeal from the board's decision to the Superior Court (No. NC 91-469).

Despite the absence of an official consolidation order, the Superior Court heard and decided as one Kirby's appeal as to the revised plan (No. NC 91-469) and his appeal as to the first plan (No. NC 90-386). In appealing to this court, however, Peckham did not formally seek review of the

trial justice's reversal in the second case (No. NC 91-469). Nevertheless, the parties' briefs address the propriety of the Superior Court's decision with respect to both plans. The propriety of each plan, furthermore, raises the same issues. Under these circumstances, the intent of Peckham clearly was to appeal the Superior Court's judgment in both cases (No. NC 91-469 and No. NC 90-386). We, therefore, will review the Superior Court's action as to the revised plan (No. NC 91-469) and the first plan (No. NC 90-386) as if that court had entered an order consolidating the two appeals. *See Culbert v. Young,* 140 Wis.2d 821, 412 N.W.2d 551, 553 (1987).

## II

Before addressing the main issue presented to this court, we must resolve several procedural issues. The first concerns whether the board is a proper party to this action.

### A

█ The notice of appeal, filed on October 16, 1992, named Stephen A. Haire and Michael W. Miller as attorneys for defendant; the former is listed as representing Peckham, and the latter is shown as representing the town of Middletown. The notice itself, however, contained only the signature of Stephen A. Haire, and only Peckham paid the requisite appellate filing fee of $150. Therefore, notwithstanding the notice's reference to the town of Middletown, the appeal clearly was filed by Peckham alone. Only later did the board join in the appeal.

In joining the appeal, the board referred to itself as the "Planning Board of Review of the Town of Middletown." The board, however, was not named as a party to the action appealed from, in that Kirby's Superior Court complaint named the individual members of the board in their official capacities. Our first concern is whether this disparity, standing alone, invalidates the board's appeal.

█ It is recognized that whenever a party "is a defined public body with a small and readily ascertainable membership * * *, there is no legal bar to referring collectively to the individual members of the public body by its statutory title." *Ciszewski v. Industrial Accident Bd.*, 367 Mass. 135, 139–40, 325 N.E.2d 270, 273 (1975) (quoting *School Committee of Boston v. Reilly*, 362 Mass. 334, 339–40, 285 N.E.2d 795, 799 (1972)). This rule applies in situations in which the public body is a defendant as well as where it is a plaintiff. 367 Mass. at 139–40, 325 N.E.2d at 273. Moreover, when the name of a party to an action is changed on appeal, the new name will suffice if it refers to the party "in such terms that every intelligent person understands who is meant." *C & C Title Co. v. Independent School District No. 7 of Tulsa County*, 503 P.2d 554, 559 (Okl.1972) (quoting *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir.1947)).

Applying these principles to the instant case, we conclude that the board permissibly altered its designation on appeal. The board consists of only five members, and the name as altered clearly designates who is pressing the action. In these circumstances, the board, as such, is a properly named party. This, however, does not conclude our inquiry, for we also question whether the board properly joined in Peckham's appeal.

Under Rule 3(b) of the Supreme Court Rules of Appellate Procedure, two or more persons may file a joint notice of appeal or may join the appeal after filing separate timely notices of appeal. Each party, however, must pay the prescribed $150 filing fee. Rule 5(a). Failure of a party to tender the requisite fee renders its appeal invalid. Rule 3(a).

█ The record before us indicates that whereas Peckham paid its fee, the board did not. Nor did the board seek relief from the filing fee pursuant to Rule 5(b)(1). Consequently, the board is not a party to this appeal.[3] Nevertheless, resolution of this

---

3. Resolution of this issue renders it unnecessary to reach the issue of whether the board has standing to appeal the reversal of one of its own decisions. Some courts hold that tribunals such as planning boards have standing to defend their positions by appealing judgments that reverse their decisions. 83 Am.Jur.2d *Zoning and Planning* § 1041 (1992). Other courts hold that such tribunals lack standing to appeal reversals of their own decisions, for their function "is to conduct hearings and render decisions." *Id.*

This court has not yet considered whether planning boards have standing to appeal reversals of their decisions. We note, however, that, in general, agencies and heads of agencies that perform only quasi-judicial functions do not have standing to seek review in this court, for they have no responsibility to the public to ensure that their decisions are upheld. *Newman–Crosby Steel, Inc. v. Fascio*, 423 A.2d 1162, 1165 (R.I. 1980). For example, it is well-settled that zoning boards do not have standing to appeal reversals of their own decisions. *See, e.g., Marteg Corp. v. Zoning Bd. of Review of Warwick*, 425 A.2d 1240, 1243 (R.I.1981); *Apostolou v. Genovesi*, 120 R.I. 501, 505, 388 A.2d 821, 823 (1978); *Town of East Greenwich v. Day*, 119 R.I. 1, 3, 375 A.2d 953, 954 (1977); *Hassell v. Zoning Bd. of Review of East Providence*, 108 R.I. 349, 353, 275 A.2d 646, 649 (1971). In reaching this conclusion, we reasoned that a zoning board has limited statutory duties that create no personal or official interest in the matters coming before the board other than to decide them. *Hassell*, 108 R.I. at 352–53, 275 A.2d at 648–49. Therefore, challenges to reversals of zoning-board decisions must be made by those whose land use will be affected by

case is not affected, for Peckham may properly press the appeal.

## B

■ The second procedural issue addresses the proper method for obtaining review of judgments of the Superior Court in municipal-planning-board cases. Peckham, citing *Lett v. Caromile*, 510 A.2d 958 (R.I.1986), contends that review by this court is by direct appeal. In contrast, Kirby argues that review should arise by the granting of a petition for a writ of certiorari, as in the procedure for reviewing judgments of the Superior Court in zoning cases. We agree with Kirby.

Although the enabling legislation concerning the subdivision of land, G.L.1956 (1991 Reenactment) chapter 23 of title 45, does provide for appeal to the Superior Court from planning-board decisions, there is no statutory right of appeal to this court.[4] In ruling that certiorari is the proper procedure, we are guided by our jurisdictional determinations in appeals from zoning-board decisions.

Because of the absence of a statutory provision for review by this court of the Superior Court's judgments in zoning cases, we have held that "[s]uch judgments are only reviewable in this court by common law certiorari." *Gaschen v. Zoning Bd. of Review of Cumberland*, 499 A.2d 419, 419 (R.I.1985) (order) (citing *Bassi v. Zoning Bd. of Review of Providence*, 107 R.I. 702, 271 A.2d 210 (1970)). This practice accords with the statutory provisions for judicial review of administrative agency decisions. General Laws 1956 (1988 Reenactment) § 42–35–15 and § 42–35–16. Specifically, § 42–35–16 provides for Supreme Court review of Superior Court decisions in administrative agency cases by writ of certiorari. *Barrington School Com-*

*mittee v. Rhode Island State Labor Relations Bd.*, 608 A.2d 1126, 1138 (R.I.1992) (citing § 42–35–16).

Notwithstanding the absence of a statutory right of appeal and notwithstanding our precedent in appeals from the decisions of zoning boards and administrative agencies, we have on occasion heard appeals of Superior Court judgments in planning-board cases as of right. *See Lett*, 510 A.2d at 959; *Jeffrey v. Platting Bd. of Review of South Kingstown*, 103 R.I. 578, 580, 239 A.2d 731, 733 (1968). However, we have never addressed the propriety of direct appeal. Although we choose to consider the instant appeal, in the future we shall review judgments of the Superior Court in planning-board cases only by writ of certiorari. We are of the opinion that this is a sounder approach. It comports with our method of reviewing Superior Court decisions in the appeals of administrative agencies and zoning-board cases. In addition, it complies with this court's practice of affording review only by common-law writ of certiorari in the absence of a statutory right of appeal. *See, e.g., Bassi*, 107 R.I. at 706, 271 A.2d at 213. We now address the main issue presented by this appeal.

## III

The third sentence of section 801 of the Middletown Subdivision Rules and Regulations states,

"If abutting property is not subdivided, streets within the plat being subdivided shall project to the property line of abutting land."

Relying upon this sentence, the trial justice held that the board exceeded its authority in rejecting Kirby's proposed subdivision plan. The trial justice reasoned that because the abutting property already had been subdivided, the board improperly required streets in the proposed subdivision to extend to abutting property lines. Peckham argues that the trial justice misapplied the law. Because

the decision or by a city or town solicitor acting on the public's behalf. *Id.* at 353, 275 A.2d at 649.

4. Chapter 23 of title 45 has been amended by the Rhode Island Land Development and Subdivision Review Enabling Act of 1992 (Development Review Act), P.L.1992, ch. 385, § 1 (codified at

G.L.1956 (1991 Reenactment) §§ 45–23–25 through 45–23–74). Effective July 1, 1995 the Development Review Act will supplant §§ 45–23–1 through 45–23–24. Section 45–23–28(B), as amended by P.L.1993, ch. 144, § 1. The Development Review Act likewise lacks a provision for Supreme Court review.

the abutting property is capable of further subdivision, Peckham argues, the board properly and reasonably construed section 801. Furthermore, Peckham continues, the board's interpretation conforms to the purpose and intent behind the Middletown Subdivision Rules and Regulations, as well as to the principles of the enabling statute.

Judicial review of board decisions pursuant to § 45–23–20 is not *de novo*. *E. Grossman & Sons, Inc. v. Rocha*, 118 R.I. 276, 285, 373 A.2d 496, 501 (1977). Rather, § 45–23–20 empowers the Superior Court to review planning-board decisions utilizing the "traditional judicial review" standard that is applied in administrative-agency actions. 118 R.I. at 285, 373 A.2d at 501. In reviewing a planning board's decision, therefore, the Superior Court lacks the authority to consider the credibility of witnesses, to weigh the evidence, or to make its own findings of fact. *Lett v. Caromile*, 510 A.2d at 960. Its review is confined to a search of the record to ascertain whether the board's decision rests upon "competent evidence" or is affected by an error of law. *See id.*

When this court reviews such an appellate decision of the Superior Court, the scope of our review is confined to determining whether the trial justice exceeded his or her authority under § 45–23–20. *See Sawyer v. Cozzolino*, 595 A.2d 242, 245 (R.I.1991). A decision will be reversed only when we determine that the Superior Court justice "misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *Brum v. Conley*, 572 A.2d 1332, 1335 (R.I.1990); *Taylor v. Marshall*, 119 R.I. 171, 178, 376 A.2d 712, 716 (1977). After examining the trial justice's decision and the record of the proceedings before the board, we are persuaded that the trial justice misapplied the law.

## A

The critical inquiry here is whether, under section 801, the street system within Kirby's proposed subdivision must extend to the property lines of the adjoining property. Resolution of this issue requires us to interpret section 801.

When interpreting a legislative enactment, this court's task is to establish and effectuate statutory intent. *In re Advisory Opinion to the Governor*, 504 A.2d 456, 459 (R.I.1986). When the enactment's language is clear and unambiguous, the statute must be applied literally, without extension or construction. *Pizza Hut of America, Inc. v. Pastore*, 519 A.2d 592, 593 (R.I.1987). In such circumstances, the words must be given their plain and ordinary meaning. *Trifari v. Employees' Retirement System of Providence*, 485 A.2d 100, 102 (R.I.1984). We do not, on the other hand, interpret a legislative enactment literally when to do so would produce a result at odds with its legislative intent. *Sugarman v. Lewis*, 488 A.2d 709, 711 (R.I.1985); *East Greenwich Fire District v. Penn Central Co.*, 111 R.I. 303, 312, 302 A.2d 304, 309 (1973). Rather, we will give the enactment "what appears to be the meaning that is most consistent with its policy or obvious purpose." *Zannelli v. Di Sandro*, 84 R.I. 76, 81, 121 A.2d 652, 655 (1956). Furthermore, with respect to municipal subdivision rules and regulations, all courts are statutorily required to interpret them "most favorably to the plan commission [so as] to give to the plan commission the fullest and most complete powers possible concerning the matters provided for [in the enabling legislation]." Section 45–23–21. With these guidelines in mind, we next interpret section 801.

## B

Section 801 of the Middletown Subdivision Rules and Regulations states:

"*Street Arrangement*

"Unless deemed inappropriate by the Planning Board, streets in a subdivision shall be so arranged as to provide for the continuation of existing or platted streets in abutting property. Where a plat submitted covers only a part of the applicant's land, the street arrangement shall be such that it can be coordinated with the remainder of his land. If abutting property is not subdivided, streets within the plat being subdivided shall project to the property line of abutting land."

We are of the opinion that this provision is clear and unambiguous and should, therefore, be literally applied.

The first sentence of section 801 states, "[s]treets in a [proposed] subdivision shall be so arranged as to provide for the continuation of existing or platted streets in abutting property." The mandates of the third sentence, that begins, "[i]f abutting property is *not* subdivided," apply where unsubdivided neighboring property is devoid of planned or existing streets. (Emphasis added.) Section 801 clearly fosters the development of a coordinated street system: the first sentence does so by requiring proposed subdivisions to link their streets to those built on adjoining land, and the third sentence promotes this end by ensuring that, where abutting property is devoid of existing or planned streets, any street system within a *proposed* subdivision will readily connect with future roads on adjoining land. This is the legislative purpose that our application of section 801 must effectuate.

The third sentence of section 801 applies to all land that is "not subdivided" and, by implication, to land that lacks an existing or planned street system. According to article 3, section 301, of the Middletown Subdivision Rules and Regulations, the term "subdivision" includes "resubdivision" and "relate[s] to the process of subdividing or to the land subdivided." Therefore, as used in section 801, the term "subdivided" also denotes "resubdivided." Under this interpretation, the streets within a proposed subdivision must extend to the border of each adjoining parcel of land that is capable of subdivision or resubdivision.

The trial justice concluded, contrary to the board's determination, that the street system in Kirby's proposed subdivision did not have to project to the borders of abutting land. By applying the converse of the third sentence of section 801, he reasoned that, because the abutting property had been subdivided, projection was not required. In reversing the trial justice, we are of the opinion that our construction of section 801 effectuates the legislative purpose embodied in land-use and subdivision enactments.

Our interpretation ensures that if a proposed subdivision is abutted by land without an existing or planned street system, the subdivision's road scheme can be joined to any roads that may eventually be developed on the adjoining land. Furthermore, because our interpretation fosters the coordinated, harmonious development of Middletown's street system, we also effectuate the intent expressed in the enabling legislation from which the Middletown Subdivision Rules and Regulations derive. Section 45–23–3.

By empowering local governments to enact and enforce subdivision rules and regulations, the Rhode Island Comprehensive Planning and Land Use Regulation Act, G.L.1956 (1991 Reenactment) chapter 22.2 of title 45 and the Subdivision of Land, §§ 45–23–1 through 45–23–24, endowed cities and towns with broad grants of authority "to promote 'the general health, safety, morals or general welfare' of the community." *Sugarman,* 488 A.2d at 711 (quoting § 45–23–2). To this end, the enabling legislation requires subdivision rules and regulations

> "to make adequate provisions for traffic; to lessen traffic accidents; to promote safety from fire, flood, and other dangers * * * to secure a well-articulated street and highway system * * * to promote a coordinated development of unbuilt areas; * * * and to facilitate the adequate, efficient, and economic provision of transportation, water supply, sewerage, recreation, and other public utilities and requisites." Section 45–23–3.

Article 2 of the Middletown Subdivision Rules and Regulations reiterates these same basic objectives. Additionally, this court has recognized that "[s]ubdivision legislation attempts to control the development of vacant land by requiring that streets within [a proposed] development shall be properly constructed and *logically related to the existing street system.*" (Emphasis added.) *Town of Coventry v. Glickman,* 429 A.2d 440, 444 (R.I.1981).

Clearly, our opinion effectuates the public-policy objectives enunciated in the Middletown Subdivision Rules and Regulations, in general, and those in section 801, in particular.

Finally, this court reads section 801 as granting the board the fullest power to control street systems within Middletown, and thereby complies with the mandates of § 45–23–21.

### C

Given our interpretation of the applicable regulations and statutes, it is clear that in overturning the board's decision, the trial justice misapplied the law. Accordingly, the appeal is sustained and the judgment of the Superior Court is reversed. The papers in the case are remanded to the Superior Court with directions to enter judgment affirming the decision of the board.

FAY, C.J., did not participate.