DECISION
Before this Court are consolidated appeals brought by JCM, LLC ("JCM") of decisions by the Lincoln Zoning Board of Review of the Town of Lincoln, sitting as the Board of Appeal ("Board of Appeal"). The Board of Appeal's decisions, issued on May 1, 2007 and April 1, 2008, *Page 3 
affirmed the Lincoln Planning Board's ("Planning Board") decisions, which denied two subdivision applications of JCM. Although these appeals involve distinct subdivision applications, each involves the same parties, the same property, and overlapping legal issues. Therefore, in the interest of judicial economy, this Court consolidated these appeals on May 27, 2009. Jurisdiction is pursuant to G.L. 1956 § 45-23-71.
 I Facts and Travel
JCM is the owner of a parcel of land on Jenkes Hill Road in Lincoln, Rhode Island. The property, designated as Assessor's Plat 26, Lot 2, consists of 2.35 acres and is zoned RA-40, which requires that each lot be at least 40,000 square feet. A single-family home and a shed currently sit on the property. Both of JCM's applications proposed the subdivision of the property into two residential lots. JCM planned to leave the existing single-family home undisturbed and construct an additional single-family home on the newly created lot. Both lots would exceed the 40,000 square foot minimum lot size after the subdivision.
Because of the shape and dimensions of the property, a subdivision would result in the new lot lacking the one hundred and fifty feet of frontage[1] required by the Lincoln Zoning Ordinance. (Town of Lincoln Zoning Ordinance, adopted May 15, 2007, at 28.) To remedy the problem of insufficient frontage, JCM initially filed an application for a variance before the Town of Lincoln Zoning Board of Review in 2004. When that application went before the Planning Board for review, the Planning Board unanimously recommended that the variance not be granted. Instead of moving forward with the variance application, JCM filed the two subdivision applications presently before the Court in this case. *Page 4 
 A First Application
In March 2006, JCM filed its first master plan subdivision application with the Planning Board. The proposed project was classified as a major subdivision due to JCM's request for several subdivision regulation waivers. After the Technical Review Committee ("TRC") recommended the denial of the waiver requests, JCM withdrew those requests. The master plan proposed to remedy the problem of insufficient frontage by building a public roadway adjacent to the property. The road proposed was a cul-de-sac approximately two hundred feet in length, which would provide access to the lot from the existing roadway. Despite JCM's withdrawal of its waiver requests, the TRC continued to characterize the project as a major subdivision because of the construction of a public road. The project received a certificate of completion in March 2006.
The TRC reviewed JCM's application at no fewer than five hearings throughout 2006. At the hearings, the TRC recognized that the master plan met all of the technical requirements in the Town's 2005 Land Development and Subdivision Regulations ("Subdivision Regulations") but nevertheless found that it did not promote or address several of the general purposes set forth in the Subdivision Regulations. Specifically, the TRC observed that the project failed to meet the following subdivision purposes and recommended as follows:
 • Purpose (2) — Promote high quality and appropriate design and construction of land development and subdivision — The proposed project "does not promote high quality and appropriate design and construction of land development and subdivision." It is not appropriate to accept the maintenance for a public road constructed for the sole purpose of creating one new house lot.
 • Purpose (4) — Promote design of land development and subdivisions that are well-integrated with the surrounding neighborhoods with regard to natural and built features, and *Page 5 
which concentrate development in areas which can allow the best support for the appropriate uses by reason of natural characteristics and existing infrastructure — The proposed project does not "encourage local design and improvement standards to reflect the intent of the Lincoln Comprehensive Plan with regard to the physical character of the various neighborhoods and districts of the Town." Limerock Village is an area where the Town "seeks ways to use less land" for development.
 • Purpose (5) — Encourage local design and improvement standards to reflect the intent of the Lincoln Comprehensive Plan with regard to the physical character of the various neighborhoods and districts of the town — The proposed project does not "encourage local design and improvement standards to reflect the intent of the Lincoln Comprehensive Plan with regard to the physical character of the various neighborhoods and districts of the Town." The proposed project is for the development of one road for one new house and one existing house. This project does not represent a neighborhood.
The TRC also concluded that the project did not meet the goals and objectives of the Town's 2003 updated Comprehensive Plan ("Comprehensive Plan"). As a result of these shortcomings, the TRC recommended that JCM's master plan be denied.
On July 26, 2006, the Planning Board discussed the master plan at a public informational meeting. At the hearing, the Planning Board heard testimony from Lincoln Town Planner Albert V. Rinaldi, Jr.; Town Engineer N. Kim Wiegand, P.E.; Attorney Michael A. Kelly on behalf of JCM; an engineering consultant on behalf of JCM; and several abutters of the property who expressed opposition to the new road. Mr. Rinaldi expressed the TRC's view that the project was inconsistent with the Comprehensive Plan and Subdivision Regulations. Mr. Rinaldi, who also serves as the Planning Board's Administrative Officer, testified that the project was
 not a good design[,] and it would have a negative impact on town services where the town would have to service one road at 200-plus feet for one house. And we feel that that's a burden onto the town. And based on the comprehensive plan and their purpose of high quality and appropriate design and also to promote design of land development subdivisions that are well integrated with *Page 6 
surrounding neighborhoods, the TRC recommends denial of this application. (Tr. at 6, Planning Board Hearing, July 26, 2006.)
Ms. Wiegand informed the Planning Board that the Public Works Department was not in favor of creating a road to service one lot. According to Ms. Wiegand, "[t]his is essentially a private road which is not servicing anyone else. . . . And private roads for good reason are not allowed." Id. at 7-8. Attorney Kelly pointed out that in addition to serving the new house, the road would also service the existing house on the property.Id. at 11. Attorney Kelly also conducted a direct examination of an engineering consultant, wherein the consultant stated that JCM's subdivision application complied with all subdivision regulations and zoning requirements.Id. at 13.
Next, the Planning Board heard testimony from several abutters who expressed concerns over safety and potential property devaluation. One abutter who testified at the public hearing raised concern over the already dangerous nature of the existing road.Id. at 18-19. According to that abutter, "[a]nybody who lives on that road now who travels it will testify on the reckless driving, the speeding. You turn into a driveway at your own peril. You're now talking about adding another road, as was previously noted, on a curve." Id. The Planning Board ultimately decided to table the vote on the master plan in order to review new information and documents presented at the hearing.
At the public informational meeting, JCM also presented the Planning Board with a report from Edward Pimentel, a land use planning and zoning consultant. Mr. Pimentel's report contended that JCM was entitled to subdivide its property because the proposed development was consistent with all subdivision and ordinance regulatory requirements. (Pimentel's Report, July 26, 2006, at 10.) The report stated that "[t]he development [was] consistent with the goals and objectives of the Comprehensive Plan as well as the character of the surrounding neighborhood." Id. *Page 7 
On September 27, 2006, the Planning Board held a hearing and voted on JCM's first subdivision application. The Planning Board adopted the recommendations of the TRC and unanimously voted to deny the master plan.
JCM appealed the Planning Board's decision, and the matter was heard by the Zoning Board of Review, sitting as the Planning Board of Appeal, on May 1, 2007. The Board of Appeal affirmed the Planning Board's decision to deny JCM's master plan application by a vote of four to one. (Town of Lincoln Planning Board of Appeal Decision, May 1, 2007, at 3.) The Board of Appeal found that
 "[b]ased on the evidence contained in the entire record of the proceedings before the Lincoln Planning Board, which the Planning Board of Appeal finds to be credible, comprehensive, substantial and probative, it appear[ed] that the applicant . . . failed to meet the standards for the granting of its Application of Appeal of the Lincoln Planning Board's denial of Major Subdivision Master Plan approval for the project." Id. at 2.
The Board of Appeal also found "that the Planning Board's decision was not affected by prejudicial procedural error, clear error or lack of support by the weight of the evidence in the record."Id. at 2-3.
On June 14, 2007, JCM filed a Complaint in this Court to appeal the Board of Appeal's decision. JCM filed an Amended Complaint on September 17, 2007.
 B Second Application
While the appeal for the first subdivision application was pending before this Court, JCM filed a second subdivision application in September 2007. Rather than proposing the construction of a new roadway, JCM's second application sought a dimensional variance in order to meet the frontage requirements of the Zoning Ordinance and Subdivision Regulations. The *Page 8 
project was classified as a major subdivision because of the need for a dimensional variance for the width of the lot. The plan received a Certificate of Completeness on September 24, 2007.
The TRC reviewed JCM's second application at several hearings between October 2007 and December 2007. The concerns raised by the TRC were nearly identical to those raised by it with regard to JCM's first application. Once again, the TRC believed that JCM's master plan did not promote or address subdivision purposes numbers 2, 4, and 5. With regard to these general purposes, the TRC made the following findings:
 • The proposed subdivision would create an irregular shaped lot commonly referred to as a hockey stick lot. This type of lot configuration is not of high quality or appropriate design for the sole purpose of creating one new house.
 • The applicant is proposing to take an existing lot and subdivide it into two lots with the creation of an irregular shaped lot. While there may be one or two examples of irregular shaped lots within the surrounding area, these lots were created several decades ago. The development within the last two decades all display commonly accepted lot configurations.
 • As stated above, the applicant is proposing to take an existing lot and subdivide it into two lots with the creation of an irregular shaped lot. While there may be one or two examples of irregular shaped lots within the surrounding area, these lots were created several decades ago. The development within the last two decades all display commonly accepted lot configurations.
The Planning Board held a public informational meeting for the project on November 28, 2007. No abutters testified at the meeting. (See Lincoln Planning Board Minutes, November 28, 2007.)
The Planning Board heard testimony and denied JCM's second application on December 19, 2007. Attorney Michael Kelly submitted an additional report drafted by Mr. Pimentel in support of JCM's second application. Land use planning and zoning consultant Edward Pimentel also submitted an additional report in support of JCM's second application. The report, *Page 9 
dated December 5, 2007, stated that JCM's application was consistent with good planning practices. Mr. Pimentel stated that "communities need to start thinking `outside the box,' and assisting property owners in the development of their property that will best benefit community and developer alike." (Pimentel Report, December 5, 2007, at 4.) Mr. Pimentel also indicated that the second master plan submitted for approval would result in less environmental and financial impact and is more in line with the Comprehensive Plan than the first master plan submitted by JCM. Id. at 4. In addition, Mr. Pimentel stated that the new lot would "not negatively impact the surrounding character, reflecting the dynamic characteristics of the general surrounding neighborhood(s)." Id. at 5-6. Mr. Pimentel insisted that there was a variety of development styles in the neighborhood and noted that there was even another flag-lot directly abutting the property to the east. Id. at 5. Although the Planning Board accepted Mr. Pimentel's report into the record, it ultimately unanimously denied master plan approval of JCM's second application after adopting the findings and recommendations of the TRC.
On April 1, 2008, by a vote of 4-1, the Board of Appeal voted to deny the JCM's request for a reversal of the December 19, 2007 Planning Board decision. The Board of Appeal determined that the Planning Board decision was supported by evidence and findings in the record. (Town of Lincoln Board of Appeal Decision, April 1, 2008, at 4.) The Board of Appeal also found that the Planning Board properly relied on the reports and findings of the TRC, which stated that the project did not conform to the Comprehensive Plan or Zoning Ordinance. Id. at 5. Lastly, the Board of Appeal concluded that there was no clear or prejudicial error by the Planning Board in its denial of JCM's second subdivision application, as the zoning relief requested was excessive. Id. *Page 10 
On July 2, 2008, JCM filed a Complaint in the Superior Court to appeal the Board of Appeal's decision. Decision is herein rendered.
 II Standard of Review
Under the Subdivision of Land Act ("Act"), the review of a planning board's decision is limited. G.L. 1956 § 45-23-70. In reviewing a planning board's decision on a subdivision application, "the board of appeal shall not substitute its own judgment for that of the planning board . . . but must consider the issue upon the findings and record of the planning board." Id. Under the Act, "[t]he board of appeal shall reverse the lower body only if the zoning board finds that there was prejudicial procedural error, clear error, or a lack of support by the weight of the evidence in the record." Id.
Appeals of the Board of Appeal's decisions are brought to this Court pursuant to § 45-23-71. Subsection (c) of section 45-23-71 provides:
 The court shall not substitute its judgment for that of the planning board as to the weight of the evidence of questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions [sic];
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Page 11 
Thus, judicial review of board decisions is not de novo.Monroe v. Town of East Greenwich, 733 A.2d 703 (R.I. 1999) (citing Kirby v. Planning Board of Review of Middletown,634 A.2d 285, 290 (R.I. 1993)). This Court reviews a decision of the Board of Appeal using "the `traditional judicial review' standard that is applied in administrative-agency actions." Id.
Therefore, this Court must not weigh the evidence, pass upon the credibility of witnesses, or substitute its findings of fact for those made at the administrative level. Id. Rather, "[i]ts review is confined to a search of the record to ascertain whether the board's decision rests upon `competent evidence' or is affected by an error of law." Id.
 III Analysis A Effect of Subdivision Regulation Purposes and Comprehensive Plan
JCM contends that the Board of Appeal's reliance on the general purposes of the Subdivision Regulations and the Comprehensive Plan to affirm the Planning Board's denial of both of JCM's subdivision applications was error and in violation of its constitutional rights. JCM argues that each master plan it submitted met all of the technical requirements set forth in the Subdivision Regulations, and therefore, the applications were entitled to approval. The Defendants counter that the purposes of the regulations and the Comprehensive Plan are, in fact, requirements under the Act, and the Planning Board has discretion to deny an application even where technical requirements are met.
While the precise effect of the Subdivision Regulation general purposes and Comprehensive Plan may be in question, it is clear that both serve as more than mere guideposts in the subdivision approval process. See § 45-23-60; Townof East Greenwich v. Narragansett *Page 12 Electric Company, 651 A.2d 725, 727 (R.I. 1994). The Subdivision of Land Act mandates that a planning board shall address both the general purposes and the comprehensive plan when considering a subdivision application.See § 45-23-60. Pursuant to § 45-23-60, "[a]ll regulations shall require that for all . . . major development applications the approving authorities responsible for land development and subdivision review and approval shall address each of the general purposes stated in § 45-23-30. . . ." Prior to approval, the statute also requires that a planning board make a positive finding that "[t]he proposed development is consistent with the comprehensive community plan and/or has satisfactorily addressed the issues where there may be inconsistencies." This attention to the general purposes and comprehensive plan would be futile if the Planning Board's decision rested solely on an evaluation of technical zoning requirements. Therefore, it is clear that the General Assembly intended that the purposes of the Subdivision Regulations and the Comprehensive Plan be considered by a planning board when reviewing a subdivision application.
Our Supreme Court has also addressed the issue of a planning board's discretion to deny a proposed subdivision. SeeRestivo v. Lynch, 707 A.2d 663, 668 (R.I. 1998);Jeffrey v. Platting Board of Review of South Kingstown,103 R.I. 578, 587, 239 A.2d 731, 736-37 (1968). JCM relies uponRestivo to support its contention that a planning board has no discretion to disapprove a subdivision that conforms to the technical regulations. See 707 A.2d 663, 668 (R.I. 1998). Such reliance is misplaced, however, because the Court asserted to the contrary in that case. Id. In Restivo, the Court criticized the dissent's citation to Jeffrey to support its view that the planning board lacked discretion to disapprove a subdivision that conformed to the technical requirements, recalling that Jeffrey only applies in the narrow context of where a subdivision proposal is approved before a change in the zoning regulation. The Court rejected the dissent's *Page 13 
position and stated: "[W]e do not view this language, when considered in its appropriate context, as dictating that a planning board may in no circumstances reject a proposed plan that conforms to existing zoning regulations but might otherwise be problematic."Id. The Court iterated that the appropriate question for the trial justice was not whether the proposed subdivision failed to comply with existing zoning regulations but whether there was "any competent evidence" in the record to support the planning board's decision. Id.; see E. Grossman Sons,Inc. v. Rocha, 118 R.I. 276, 285-86, 373 A.2d 496, 501 (1977).
Additionally, our Supreme Court has plainly held that a town's comprehensive plan is more than a mere policy statement. Pursuant to the Rhode Island Comprehensive Planning and Land Use Regulation Act, all municipalities must adopt, update, and amend a comprehensive plan. G.L. 1956 §§ 45-22.2-1 to 45-22.2-14. According to the Act, a "comprehensive plan is a statement (in texts, maps, illustrations, or other media of communication) that is designed to provide a basis for rational decision making regarding the long term development of the municipality" and "forms the basis or land use decisions to guide the overall physical, economic, and social development of the municipality." See § 45-22.2-6. In Townof East Greenwich v. Narragansett Electric Company, the court rejected a town's argument that its comprehensive plan was simply a long-range statement of planning goals which was not self-executing in nature. 651 A.2d 725, 727 (R.I. 1994). Our Supreme Court asserted that "a comprehensive plan is not simply the innocuous general policy statement," but rather, it "establishes a binding framework or blueprint that dictates town and city promulgation of conforming planning ordinances." Id.
JCM also asserts that regardless of a comprehensive plan's effect, the Defendants' reliance on the Comprehensive Plan was in error because the Town failed to conform its zoning ordinances to the Comprehensive Plan within eighteen months of its adoption and approval, as *Page 14 
required by statute. See § 45-22.2-9. Nevertheless, this Court finds that the eighteen-month time period is directory, rather than mandatory. New England Development, LLC v. Berg,913 A.2d 363 (R.I. 2007) (asserting that statutes imposing mandatory time restrictions on public officials are often directory in nature). Therefore, on the Comprehensive Plan, the Planning Board's reliance was not clear error while the Board of Appeal's reliance thereon was not "[i]n violation of constitutional, statutory, ordinance, or planning board regulations provisions [sic]" even though the eighteen-month time period during which the Town may pass conforming ordinances had lapsed.
Accordingly, this Court finds that the Board of Appeal's reliance on the general purposes of the Subdivision Regulations and the Comprehensive Plan to affirm the Planning Board's denial of JCM's subdivision applications was not an error of law. It is clear that the General Assembly intended the general purposes of the Subdivision Regulations and the Comprehensive Plan to be considered and relied upon by planning boards in evaluating subdivision applications.
 B Competent Evidence
JCM further argues that neither the Planning Board nor Board of Appeal's decisions rests upon competent evidence in the record to show that the proposed project failed to meet the Subdivision Regulations and the Comprehensive Plan. Therefore, JCM contends that both decisions were arbitrary, capricious, and an abuse of discretion and should be reversed by this Court. *Page 15 
 1 First Application
In reviewing JCM's first subdivision application, the record reveals that the Planning Board heard testimony from Town Planner Rinaldi, Attorney Kelley on behalf of JCM, an engineer representing JCM, and several abutting property owners. The Planning Board also reviewed land use expert Edward Pimentel's report on the proposed project. In addition to hearing various testimonies, the Planning Board adopted the findings and recommendations of the TRC. As discussed above, the TRC recommended that the application be denied after finding that the project failed to comply with several purposes of Subdivision Regulations and was inconsistent with the Town's Comprehensive Plan. Namely, the TRC believed that the construction of a public road to create only one new house lot constituted poor planning. In finding that the project failed to meet several general purposes of the Subdivision Regulations, the TRC cited the maintenance required by the road, the use of land for development in an area where the Town sought to use less land, and the fact that the development would not represent a neighborhood like the neighborhoods that make up Limerock Village.
The creation of subdivision streets is often central to the subdivision process, and therefore, it is not surprising that the impact of the proposed road was a focal point of the Planning Board and the Board of Appeal's discussions of JCM's first application. See 5 Ziegler, Rathkopf's the Law of Zoningand Planning, 90:30 (2005). One of the primary reasons for requiring approval of subdivisions in the first place is to ensure that subdivision roads are adequate and well-designed. Id.
Here, the central concern of the Planning Board and Board of Appeal appeared not to be the technical design of the road, but rather the design quality of constructing a road to serve only two houses and the impact it would have on municipal services. *Page 16 
This Court concludes that there was competent evidence in the record upon which the Planning Board and Board of Appeal based their decisions for JCM's first subdivision application. InGrossman, our Supreme Court established that in reviewing the appeal of a subdivision application, a trial justice must determine whether there is "any competent evidence" in the record to support the planning board's decision. 118 R.I. at 285-86, 373 A.2d at 501 (emphasis added). After considering all of the evidence before it, the Planning Board ultimately denied both of the subdivision applications based upon the recommendations of the TRC. This Court finds that these factual findings upon which the Planning Board relied constituted competent evidence. See Board of County Commissioners of RouttCounty v. O'Dell, 920 P.2d 48, 50 (Colo. 1996) (internal citations omitted) (stating that "`no competent evidence' means that the governmental body's decision is `so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority. . . .'").
JCM contends that Mr. Pimentel's reports were uncontroverted evidence which the Planning Board was required to accept in its review of the subdivision application. This Court disagrees. Our Supreme Court has held that "there is no talismanic significance to expert testimony. It may be accepted or rejected by the trier of fact. . . ." Restivo, 707 A.2d at 671 (citing Kyle v.Pawtucket Redevelopment Agency,106 R.I. 670, 673, 262 A.2d 636, 638 (1970)). More recently, the Supreme Court has stated that "[i]t should go without saying that expert testimony proffered to a zoning board is not somehow exempt from being attacked in several ways." Murphy v. ZoningBoard of Review of Town of South Kingstown,959 A.2d 535, 542 n. 6 (R.I. 2008). Although JCM contends that Mr. Pimentel's reports were the only competent evidence presented, the record evidences that the reports and factual findings of the TRC also had probative force. Furthermore, it is the role of the Planning Board to weigh the *Page 17 
evidence before it. Thus, the Planning Board had the discretion to adopt the recommendations and findings of the TRC, despite the contrary assertions contained in Mr. Pimentel's reports.
The Planning Board also heard testimony from several remonstrant abutters who testified with regard to potential traffic hazards and property devaluation that would result from the construction of the new road. Our State's Supreme Court has found that the depreciation of real property and a determination as to whether traffic hazards affect the outcome of a zoning application are not matters within the testimonial competence of a non-expert witness. SeePiccerelli v. Zoning Board of Review of the Town ofBarrington, 107 R.I. 221, 226, 266 A.2d 249, 252 (1970);Thomson Methodist Church et al. v. Zoning Board of Review of theCity of Pawtucket, 99 R.I. 675, 681-82, 210 A.2d 138, 142 (1965). Therefore, the abutters' testimony does not constitute competent evidence upon which the Planning Board could properly base its decision. Nevertheless, this Court finds that Mr. Pimentel's report and the findings of the TRC constituted sufficient legally competent evidence upon which the Board of Appeal properly based its decision.
 2 Second Application
JCM's second subdivision application sought a dimensional variance to meet the frontage requirements of the Zoning Ordinance. To meet the requirement of one hundred and fifty feet of frontage, a variance of one hundred feet was needed.
In reviewing JCM's second subdivision application, the Planning Board heard testimony from Town Planner Rinaldi, Attorney Eric Brainsky on behalf of JCM, and Attorney Joelle C. Sylvia on behalf of the Town. The Planning Board also received an additional report from Mr. Pimentel in support of the second application. Once again, the Planning Board adopted the *Page 18 
recommendations and findings of the TRC. As this Court indicated above, the TRC's main concern with the JCM's second master plan was that a grant of the variance would result in the creation of an irregular shaped lot, also known as a flag lot. See 8 Rohan,Zoning and Land Use Controls § 45.02[3][a] (discussing general disfavor of flag lots and pointing out that such lots are often prohibited or restricted by communities). According to the TRC, the resulting flag-shaped lot was not of high quality or appropriate design for the sole purpose of creating one new house. The TRC also noted that the Town sought ways to use less land for development in Limerock Village, and the irregular shaped lot did not adhere to the commonly accepted lot configurations developed in the area within the last two decades.
For the same reasons cited above for the first application, this Court finds that there was competent evidence upon which the Planning Board and Board of Appeal based their decisions for JCM's second subdivision application. Contrary to JCM's contentions, the Planning Board was not bound by the statements contained in Mr. Pimentel's report. See Murphy, 959 A.2d at 542 n. 6;Restivo, 707 A.2d at 671 (internal citations omitted). In addition to the evidentiary value of Mr. Pimentel's second report, the recommendations and factual findings of the TRC also constituted competent evidence, which the Planning Board properly considered in reaching its decision.
Therefore, this Court finds that the Board of Appeals' decisions on both of JCM's applications rested upon competent evidence in the record to show that the proposed project failed to meet the Subdivision Regulations and the Comprehensive Plan and that those decisions were not arbitrary, capricious, or an abuse of discretion. *Page 19 
 C Equitable Estoppel
JCM argues that the Town should be equitably estopped from denying approval of the project because JCM relied on the specific requirements of the Subdivision Regulations and the Zoning Ordinance to its detriment. JCM contends that its good faith reliance on the technical requirements resulted in its purchasing the Jenkes Hill Road property and spending thousands of dollars in engineering and legal fees in order to obtain the subdivision.
Under certain circumstances and where the principles of equity so require, our Supreme Court has applied the doctrine of equitable estoppel against administrative and municipal authorities.Greenwich Bay Yacht Basin Assoc. v. Brown,537 A.2d 988, 991 (R.I. 1988) (internal citations omitted). However, the Court has found that granting of equitable relief in zoning is extraordinary and will not be granted except in the rare instance when the equities are clearly balanced in favor of the party seeking relief. Id. The elements of equitable estoppel are 1) good faith reliance; 2) on an act or omission of a municipality; 3) which induces a party to incur substantial obligations; and 4) making it highly inequitable to enforce the zoning ordinance. 4 Ziegler,Rathkopf's the Law of Zoning and Planning, 65:29. A plaintiff must meet all of these requirements, but our State's Supreme Court has noted that "`[t]he key element of an estoppel is an intentionally induced prejudicial reliance.'" Waterman v.Caprio, 983 A.2d 841 (R.I. 2009) (internal citations omitted).
The Court has found that the doctrine of equitable estoppel applies, for example, if a party's good faith reliance on the issuance of a building permit results in that party's substantial performance. See Shalvey v. Zoning Board of Review of theCity of Warwick,99 R.I. 692, 699-700, 210 A.2d 589, 593-94 (1965) ("[T]he holder of a permit authorizing a use lawful when it *Page 20 
was issued may, by acting in good faith in reliance thereon, acquire an interest in the use authorized which may not be divested or impaired by a subsequent amendment to the zoning ordinance making that use unlawful."). The Court has also applied the doctrine of equitable estoppel to municipalities in several other instances, including estopping a municipality from claiming that a landowner's non-conforming use was illegal because it had licensed the use for several years. Town of Glocester v. Olivo's Mobile Home Court,Inc., 111 R.I. 120, 300 A.2d 465, 471 (1973).
This Court finds that the doctrine of equitable estoppel does not apply to the instant case. In asserting its equitable claim, JCM overlooks the fact that both of its subdivision applications required substantial changes in order to meet the Town's frontage requirements. While JCM may have met all technical subdivision regulations, JCM was aware that master plan approval also falls on the project's consistency with the Comprehensive Plan and compliance with all subdivision regulations, including the general purposes. Because every piece of land is unique, there is never a guarantee of zoning approval. SeeGriffin v. Zapata, 570 A.2d 659, 663 (R.I. 1990) (remarking that land is "unique and distinctive"). Moreover, there is no evidence on the record to suggest that JCM incurred substantial obligations other than the preparation of its subdivision applications and obtaining a land use expert to support those applications. Neither is there evidence that an action or omission by the Town, intentional or otherwise, resulted in JCM's reliance. Unlike the cases cited above wherein our Supreme Court applied the doctrine of equitable estoppel, no license or building permit was issued. Therefore, JCM's argument that the Town should be equitably estopped from denying approval of the subdivision applications fails. *Page 21 
 D Usurpation of Zoning Board of Review's Power
With regard to the second subdivision application, JCM contends that the Planning Board incorrectly usurped the power of the Zoning Board of Review by refusing to grant conditional approval of the master plan. JCM argues that neither the Planning Board nor the Board of Appeal had the jurisdiction to deny the application, and therefore, the decision must be reversed.
There are many circumstances where a landowner may require both zoning relief and planning relief before moving forward with a desired subdivision. Section 45-23-61 of the Rhode Island General Laws addresses this issue and provides:
 [w]here applicant requires both a variance from the local zoning ordinance and planning board approval, the applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain conditional zoning board relief, and then return to the planning board for subsequent required approval(s).
Here, although JCM required a variance for a lack of sufficient frontage, JCM applied to the Planning Board only for subdivision approval. JCM did not seek an advisory recommendation for zoning relief from the Planning Board. Pursuant to the statute, the Planning Board could have granted conditional approval to the subdivision and permitted JCM to go forward and seek zoning relief from the Zoning Board of Review. However, this Court finds that the statute does not require the Planning Board to give conditional approval.
The Planning Board did not exceed its authority by denying JCM's subdivision application. While the Zoning Board ultimately has the authority to grant or deny a dimensional variance, the Planning Board possesses the authority to approve or deny a subdivision application. See Sawyer v. Cozzolino,595 A.2d 242, 247 (1991) (noting the court's desire not to *Page 22 
intermingle planning and zoning relief). As noted by the Defendants in their brief, the Planning Board's decision was not based on the standards for approval of a variance, as outlined in Town of Lincoln Zoning Ordinance § 260-64, but rather was based on the requirements set forth in the Subdivision Regulations and Comprehensive Plan. Therefore, the Planning Board did not usurp the power of the Zoning Board of Review, and its denial of JCM's subdivision application was not clear error.
 IV Conclusion
After a review of the entire record, this Court finds that the decision of the Board of Appeal was supported by reliable, probative, and substantial record evidence and was not made in excess of the Board of Appeal's authority under § 45-23-71 or affected by error of law. The substantial rights of the Plaintiff have not been prejudiced. Accordingly, the decisions of the Board of Appeal are affirmed. Counsel shall present the appropriate judgment for entry, consistent with this decision.
[1] Frontage refers to lot width. The Town of Lincoln Zoning Ordinance defines this as "[t]he minimum horizontal distance between the sides of a lot measured at right angles to its depth along a straight line parallel to the front lot line at the minimum front setback line."