DECISION
This matter comes before the Court on the appeal of Jonathan Roberts and Dr. Joseph Centofanti ("Plaintiffs") from a decision of the East Greenwich Zoning Board of Review ("Zoning Board"), sitting as the board of appeals for the East Greenwich Planning Board ("Planning Board").[1] Plaintiffs, neighboring landowners, seek reversal of the Zoning Board's decision which upheld the Planning Board's grant of master plan approval for a residential *Page 2 
subdivision. The grant of master plan approval was entered in favor of John and Maryanne Tibbitts ("Applicants"). Jurisdiction of this Court is pursuant to R.I.G.L. 1956 § 45-23-71.
 Facts and Travel
In 2004, Applicants submitted an application to the Planning Board seeking master plan approval to develop approximately 42.88 acres of land located at 1786 Frenchtown Road, East Greenwich, Rhode Island, (the "Town"), also designated as Lot 20 on Assessor's Plat 19 (the "Property"). The Property is zoned for Farming (F-2) and has been a working farm in the Tibbitts family for over 300 years. At the time of the application, the Property was occupied by one single-family dwelling with a detached garage, a barn, and a small cemetery. The northern and western portions of the site have been cleared with some areas used as mowed hay fields, while the remainder of the site is primarily wooded. The driveway to the existing dwelling is accessed off of Frenchtown Road. The Applicants proposed extending Hunter's Crossing, a cul-de-sac located near the back of the Property, to facilitate the establishment of a nine-lot residential cluster subdivision to be known as "Tibbitts Woods". Hunter's Crossing already exceeds the Town's maximum length limit for a cul-de-sac.
On May 5, 2005, the Planning Board held a Pre-Application Conference on the Tibbitts' application. Mr. Scott Moorehead, Professional Engineer, presented this application. Mr. Moorehead stated he had submitted a conventional plan, which included a new road extended from Frenchtown Road, and a cluster subdivision plan. He stated that the Tibbitts' preference was for the cluster plan. The Planning Board questioned Mr. Moorehead concerning the wetlands on the property, water availability, future development, and the extension of Hunter's Crossing. The Planning Board also received reports from the Fire Department and Department of Public Works, who stated they preferred the conventional design for the ease of access and the *Page 3 
elimination of the long cul-de-sac. At the conclusion of the Pre-Application Conference, the Planning Board members present expressed a preference for the cluster plan.
The Applicants' proposed cluster subdivision design plan (the "Plan") offers nine lots, of which seven are clustered around the extension of Hunter's Crossing. The Plan retains a 13.76 acre farm lot and adds a new frontage lot for the Applicants' son with driveway access to Frenchtown Road from the already existing driveway. Each of the proposed cluster lots meets the Lot Design Standards of the Development and Subdivision Regulations requirement size of 43,560 with 150 feet of frontage and an MBA of 16,710 square feet. Thirty percent of usable open space is required, which equates to 7.107 acres for this Property.[2] The open space requirement would result in a conservation easement granted to the Town, over parts of the two front lots.
Section 260-58(B) of the East Greenwich Zoning Ordinance designates Tibbitts Farm as a "property of historical, architectural, or archeological value." The Comprehensive Plan identifies the Property as a candidate property for acquisition by the Town or the Land Trust due to its open space and aesthetic values and its values as a historic farm. The Comprehensive Plan Future Land Use Map identifies the premises for a very low-density residential development and the F-2 zoning of the Property is consistent with this designation. At this time, there is no active effort on the part of the Town or Land Trust to acquire this farm as there is little funding and the effort has focused elsewhere.
Plaintiffs are the owners and occupants of the real property located respectively at 455 and 400 Hunters Crossing, East Greenwich, R.I., both of which directly abut the Applicants' parcel proposed for development. Hunters Crossing, a public roadway, comes to a dead-end cul-de-sac *Page 4 
in front of the Plaintiffs' properties. The Tibbitts proposal to subdivide the farm will extend Hunters Crossing ending in another cu-de-sac.
South of, and directly adjacent to, the Tibbitts Farm is the approximately 45 acre, largely undeveloped property of George Tibbitts, John Tibbitts' brother. Next door to this property is also their sister's undeveloped land. Abutting the sister's land are existing subdivisions that have access out to Shippee Road, a main public roadway south of Frenchtown Road. Plaintiffs are concerned that at some point these other farms will be developed and Hunter Crossing will be extended to Shippee Road, thereby creating a "shortcut" for drivers to excessively speed down instead of Frenchtown Road. Plaintiffs and other objectors believe that an alternative entrance to the Tibbitts' cluster subdivision at the same location where Tibbitts' current entrance on Frenchtown Road is located would ease any future traffic issues.
The Planning Board began a public hearing on the proposal on August 17, 2005, held a site visit on September 10, 2005, and voted to approve Applicants' Master Plan on November 2, 2005. The Planning Board decision was set forth in writing dated November 7, 2005 and was recorded on November 8, 2005 in Book 801 at Page 001 of the East Greenwich Land Evidence Records. The Plaintiffs submitted a timely appeal to the Town of East Greenwich Zoning Board, sitting as the Planning Board of Appeal.
The Zoning Board heard Plaintiffs' appeal on January 24, 2006. At the hearing, Plaintiffs argued that their primary concern was traffic. Even though it was agreed at the Planning Board hearings that the seven new Hunters Crossing lots would have minimal impact, there was discussion regarding the other Tibbitts' family owned parcels in the vicinity and that the subsequent development of these other family owned parcels, combined with a blind curve at the Hunters Crossing egress raised significant issues that the Planning Board failed to address. *Page 5 
Plaintiffs also presented an alternative plan developed by a nationally recognized planning expert, Randall Arendt, which purportedly would mitigate traffic by having two entrances to the development which would address the cul-de-sac length issue and better accommodate future housing development on other Tibbitts family owned properties. On April 13, 2006, the Zoning Board issued a written decision upholding the Planning Board's decision to grant master plan approval for the Plan.
Within the statutory appeal period, the Plaintiffs filed an appeal[3] to this Court pursuant to R.I.G.L. § 45-23-71 and the Zoning Ordinance of the Town of East Greenwich.
 Standard of Review
The standard of review for the Superior Court's appellate consideration of a zoning board's decision is governed by G.L. 1956 § 45-23-71(C), which states:
 The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or *Page 6 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Thus, judicial review of a board's decisions is not de novo. Rather, § 45-23-71 requires that the Superior Court review the board of appeals' decisions utilizing the "`traditional judicial' review standard that is applied in administrative-agency actions." Munroe v. Town of E.Greenwich, 733 A.2d 703, 705 (R.I. 1999) (quoting Kirby v. PlanningBoard of Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)). As such, "the Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Id.
Our Supreme Court has explained that "[i]t is the function of the Superior Court to `examine the entire record to determine whether `substantial' evidence exists to support the board's findings.'"Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quotingDe Stefano v. Zoning Bd. of Review, 122 R.I. 241, 245, 405 A.2d 1167,1170 (1979)). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Board of Review of the Town of NorthKingstown, 818 A.2d 685, 690, n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)).
 Analysis 1. Shifting the Burden
In support of this appeal, Plaintiffs advance six arguments as to why the Zoning Board of Appeal should be reversed. First, the Plaintiffs argue that the Planning Board committed prejudicial procedural error when it placed the burden of proof with regard to a better alternative plan on the Plaintiffs and not the Tibbitts. Plaintiffs contend that the Planning Board essentially *Page 7 
directed them to prepare an alternative site plan, thereby shifting the Applicants' burden of demonstrating evidentiary support for an affirmative finding of the standard provisions of R.I.G.L. §45-23-60.[4] Before the Zoning Board, the Applicants argued in defense that the alternative plan presented by the Plaintiffs only addressed planning and landscaping issues, and not engineering issues that the Planning Board Regulations clearly require. The Applicants further argued that the Planning Board never required Plaintiffs to prove that the plan presented did not work, nor was the Planning Board required to set forth why they preferred one plan over the other. *Page 8 
At the August 17, 2005 hearing, after Mr. Moorehead presented the Tibbitts' Plan, the Planning Board questioned Mr. Moorehead about the proposal, including questions on drainage for the sites, public water availability, and means of egress. Neighbors also had the opportunity to voice their concerns and objections. Mr. Andrew Teitz, attorney for Plaintiff Roberts, addressed the Board and stated that the neighbors had a lot of concerns about traffic, and he criticized the Applicants' Plan as "unimaginative." Attorney Teitz thought that a road off Frenchtown Road could be included in the subdivision while still saving the farmstead. Attorney Teitz suggested that a narrow or gravel road around the barn would keep the farmstead intact and that there could potentially be emergency access through to Hunter's Crossing with a gate at the end of the cul-de-sac.
It was at this point that Mr. Plante, a Planning Board Member, asked Attorney Teitz if he had prepared an alternative layout. Mr. Teitz stated that he had not, but that he would be willing to work with Mr. Moorehead and perhaps share the cost of hiring someone. Mr. Moorehead then spoke and agreed that there are creative ways to develop subdivisions, but he noted that East Greenwich requires that a road be public, paved, and meet road geometry standards and that waivers are very difficult to obtain. Mr. Moorehead argued that a new road off of Frenchtown Road would destroy the farmstead as it would be splitting the farm in two.
A review of the record reveals that the Planning Board simply inquired whether the Plaintiff had an alternative plan. At no point did Mr. Plante, or any other member of the Board, require that Mr. Teitz prepare an alternative site plan. Simply asking if there was an alternative is not the same as directing the neighbors to prepare one. It was actually Mr. Teitz who volunteered to make an alternative plan and the transcript from the meeting does not reveal that anyone responded to his offer. The burden of proof never shifted. *Page 9 
When the Public Informational Meeting was continued until November, Mr. Teitz, on behalf of the neighbors, had Randall Arendt, a conservation development expert, present an alternative plan. The Board accepted the testimony about the alternative plan, but they were not required to make any findings about the plan. In fact, the Planning Board asked Mr. Teitz what he expected them to do with this alternative plan because they could not approve it since it was not submitted by the Applicants. The Plaintiffs now argue that the Board should have denied master plan approval in light of this alternative plan. However, all the Planning Board was required to do was decide on the plan presented by the developer, here, the Tibbitts. It is the Tibbitts' plan that has to meet the requirements of § 45-23-60. It is not the Court's place to review all the prior proceedings and decide which plan was better. The Court's duty is only to determine whether `substantial' evidence exists to support the board's findings. Since the Board accepted the testimony of the alternative plan and examined whether Applicants' plan met the standards of § 45-23-60, the Court finds the Board was justified in their approval of the Applicants' plan.
 2. Attendance at Planning Board Proceedings
Second, the Plaintiffs argue that the Planning Board committed prejudicial procedural error because only one of the five members of the Planning Board who voted to approve the Master Plan actually had sufficient knowledge of the evidence presented.[5] Plaintiffs claim only three members had attended all phases of hearings and site visits on the matter and that the other voting members had failed to explain their familiarity with the project at the time they case their votes in November. The Zoning Board of Appeal found that an objection to the voting members should have been made at the time the vote was taken. *Page 10 
There is no evidence in the record to support the Plaintiffs' claim that the four Board members who voted to approve the Master Plan did not have sufficient knowledge of the application. Furthermore, the Plaintiffs do not cite any legal authority to support this argument. Although R.I.G.L. § 45-24-56(b) requires that all five Zoning Board of Review members who vote on a petition must have been present for all parts of the public hearing on the petition, there is no similar attendance requirement for Planning Board members.
Furthermore, the Plaintiffs did not raise this argument until appeal, so the argument was waived before the Zoning Board. See East BayCommunity Development Corporation v. Zoning Board of Review ofBarrington, 901 A.2d 1136. 1153 (2006). Even if it were still a viable argument, Plaintiffs do not cite any authority as to whether the Planning Board is even required to prove that they were familiar with the property and the case at hand. In fact, one member of the Planning Board did not vote, even though he was present at the Nov. 2, 2005 meeting, because he never heard the first hearing or the site walk and "it wouldn't be appropriate." (Nov. 2, 2005 Meeting Mins. 104) This seems to imply that whether the voting members had the necessary background of the case was reviewed since it is on the record that it was "not appropriate" for a member to vote without having been there for the walk through and previous meeting. Therefore, this Court finds no merit to the argument that the Planning Board committed prejudicial procedural error.
 3. Consistency with Comprehensive Plan
Plaintiffs argue that the Planning Board decision is inconsistent with the Town of East Greenwich Comprehensive Plan in violation of R.I.G.L. § 45-23-60(1) because the Planning Board overlooked material evidence and thus committed clear error in approving the master plan proposal. Plaintiffs contend that while the Applicants' proposal was consistent with the Future *Page 11 
Land Use Map in terms of density, there was also a section of the Comprehensive Plan that called for this specific parcel to be preserved indefinitely as open space. Plaintiffs argue, therefore, that the Planning Board made an error when it disregarded the fact that an alternate plan could be developed that better fit the intent of the Comprehensive Community Plan by optimizing the land as open space.
In his staff report to the Planning Board in advance of its November 2, 2005 meeting, Director of Planning Lee Whitaker, reported "At this time there is no active effort on the part of the Town or the Land Trust to acquire this farm as there is little funding and the effort has focused elsewhere." Therefore, the Planning Board had notice that the Town was not currently interested in obtaining this property, and even though the farm had been one of the properties the Town had wanted to preserve, the Town could not afford it and had changed their focus. It cannot be expected that owners indefinitely leave their property idle, until the Town can raise enough money or until the Town decides it does want to obtain the property. Here, the Director of Planning essentially implied the Town had no interest in the property at this time, and thus should not be considered a barrier to the Applicants' plan.
Director of Planning Whitaker's report also stated that "cluster subdivisions are generally preferred for their preservation of open space. `Saving' Tibbitts Farm looks and feels more like East Greenwich and this would be consistent with the Comprehensive Community Plan's identification of this property as a candidate property for acquisition." A condition of the master plan approval was a conservation easement must exist along the property on Frenchtown Road. The condition states that "[t]he conservation easement and the open space easement, both shown on the Master Plan, shall run to the town of East Greenwich." Thus, the objectives of the *Page 12 
Comprehensive Plan are the met by the current application and there is no merit to the Plaintiffs' argument of clear error.
 4. Precedence of Rights of Property Owners
Plaintiffs contend that the Planning Board's interest in giving precedence to the rights of the property owners was not an appropriate criterion for approval and amounts to clear error. The Plaintiffs refer to statements made by Planning Board members Mr. Holbrook, Mr. Bishop, and Mr. Weiss to support this argument.[6] The Applicants argue that individual Planning Board members' opinions regarding property rights were irrelevant to the decision made by the entire board, and therefore did not rise to the level of "clear error." Although the Planning Board members did in fact make these statements, the Plaintiffs have taken them out of content to advance their own arguments.
Mr. Holbrook's statement that he "place[s] a lot of value on property rights" was made right after he stated that its time for the family to make a decision and do what they intend to do with the property since it has been in the family for 300 years. This was also following a statement made earlier in the evening by Mr. Mosca, the Applicant's attorney, that the Tibbitts, as the property owners, have the right and prerogative to have their plan heard, not the alternative plan presented by the Plaintiffs. (Tr. Nov. 2, 2005, p. 64, l. 20-22) Mr. Holbrook went on to say that he believed that although the safety issue had some merit, it could be overcome. He continued on, stating that its been a farm, and everyone loses a piece of themselves when something that has been in the heritage of the town has to be broken up, but that he felt the Applicants' approach minimized what the town would lose by making what comes out of it have *Page 13 
as much resemblance to the farm that has always been there. There is no indication that Mr. Holbrook relied on a belief that property rights were superior in his vote, and certainly no indication that his statement convinced others to vote in favor also.
Mr. Weiss stated that Mr. Holbrook made a good point about property rights, but that came directly after he commended Mr. Teitz, the Plaintiffs' attorney for a good argument. Both statements came at the beginning of his discussion of his vote. Although he recognized that safety could be an issue, he then asserted that children playing in the road are not the purpose of a public street. Because he failed to see any great public problem caused by the Applicants' proposal, he also voted in favor of granting master plan approval.
Mr. Bishop stated that traffic concerns might have to be mitigated but it was a separate issue. His comment about property rights have the highest precedence for him came amidst his statement that he had to focus on "the moment" — the proposal only called for six or seven additional houses being built — and that was different than the traffic nightmare they might anticipate at some future date with property that is not even planned yet.
This argument is similar to the burden shifting claim rejected above. The Planning Board members' comments only note that owners should have some discretion in selecting how to develop their realty, so an objector's alternative may have less import. Plaintiffs do not cite authority to indicate that such a consideration is inappropriate. If the proposal meets the Comprehensive Plan and all the state and local regulations, then the application should obviously be approved, regardless of whether Plaintiffs believe their proposed plan is better. This Court finds no clear error in the Planning Board's consideration of property rights. *Page 14 
 5. Traffic Safety Evidence
Plaintiffs argue that the Planning Board decision is not supported by substantial evidence with regard to traffic safety. Plaintiffs maintain that the Board committed clear error in failing to address future traffic implications of the development, even though some Planning Board members acknowledged that it could be a nightmare. They further argue that the Planning Board only focused on the development at hand, rather than the big picture, and in doing so they have ignored that an alternate plan existed that would minimize the traffic impact that everyone seemed to agree could be significant. Finally, Plaintiffs contend that the Planning Board did not address the testimony of Randall Arendt in its decision, only the testimony of the Applicants' engineer, who Plaintiffs argue was not qualified to address the project's compliance with the Comprehensive Plan.
Much of the concern about future traffic centered on the potential future development of the neighboring property of George Tibbitts. At the time of the application, George Tibbitts stated that he had no plans to develop his adjacent property. Before the Zoning Board plaintiffs conceded that if the focus was just on the Applicants' development, it would not be an issue. There is no legal authority to state that the Planning Board should consider all potential further development in their deliberations.
Some courts have held that a Planning Commission may deny subdivision approval where existing public improvements are so inadequate as to not be reasonably able to absorb the predicted growth — as where a school system is at or above capacity — and where the tax benefits to be received by the subdivision are insufficient to remedy the deficiency.See 2 Rathkopf, The Law of Zoning and Planning, § 15:30 (2002). However, a municipality should not prevent the entrance of newcomers solely to avoid future burdens, economic or otherwise, upon the *Page 15 
administration of public services and facilities. Cf. Town of Glocesterv. Olivo's Mobile Home Court, Inc., 111 R.I. 120, 300 A.2d 465 (1973). Here, the Plaintiffs are asking the Planning Board to consider any further development that might occur when they vote to approve a subdivision. To base a decision on so many uncertainties — whether a development will be built, the size of this future development, the number of cars that the people in the development would own, whether any future access roads would be built, and then what roads the people would drive to get to their homes — is unreasonable speculation. The Planning Board must rely on facts before it, that only seven more homes will be built needing access through Hunter's Crossing. Equipped with this information, the Planning Board did not commit clear error when they approved the master plan.
Additionally, the Planning Board did not make the final decision on the traffic safety issue, as it conditioned approval on traffic flow and impact data to be provided to show the potential impacts of this development and the future extensions of the roadway out to Shippee Road.
Although Plaintiffs argue that the Planning Board ignored the testimony of Randall Arendt and the Applicants' engineer was not qualified to address the project's compliance with the Comprehensive Plan, they fail to fully brief these arguments. Besides blanket statements, Plaintiffs provide no evidence to support these contentions. Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue. Wilkinson v. State Crime LaboratoryCommission, 788 A.2d 1129, 1131 (R.I. 2002) (citing O'Rourke v.Industrial National Bank of R.I., 478 A.2d 195, 198 (R.I. 1984) (citingMercurio v. Fascitelli, 116 R.I. 237, 354 A.2d 736 (1976), and holding that the plaintiffs' failure to present *Page 16 
legal authorities and to argue an asserted error of the trial court in their legal brief constituted a waiver of that alleged error)). Even assuming these were valid arguments, the Planning Board was not required to find any facts with regards to Mr. Anendt's alternative plan. The plan was offered for rebuttal. The Planning Board approval of the master plan, does not establish that the Planning Board ignored Mr. Arendt's expertise. Mr. Moorehead is a Professional Engineer, and the Planning Board addressed questions to him that would be addressed to someone who was qualified as an expert. It is reasonable to assume the Planning Board accepted any testimony from Mr. Moorehead as that of an expert. Thus, the Court finds no merit to the Plaintiffs' contentions of clear error.
 6. Required Findings of Fact
Finally, Plaintiffs argue that the Planning Board committed clear error and prejudicial procedural error in not addressing the required findings for approval of the master plan and the required waiver. Plaintiffs argue there were no findings of fact in the Planning Board's written decision and that the decision was simply a restatement of the relevant standards and not related back to the actual facts of the case as required. The Zoning Board found that while the Rhode Island Supreme Court has reinforced the need for explicit findings in decisions to make them legally defensible, here, Plaintiffs' issue seems to be with the formatting and not an actual lack of findings. The Zoning Board relied on the actual findings. This Court concurs.
While the Planning Board could have written their decision in clearer terms with more detail, the result satisfied the requirement for stating findings of fact. The Plaintiffs seem to disagree with the Planning Board's use of the term "whereas" to indicate their reasoning for approving the master plan. However, following the "whereas", the decision states the testimony received by the Planning Board and the dates of their meetings in relation to this case; that the *Page 17 
Property had been identified as a candidate for acquisition by the town but that there was no active effort, no funding, and the effort had focused elsewhere; that the cluster subdivision preserves the vista, the farmstead, and the cemetery; that there will be a conservation easement to the town and so, at most, only one additional lot could be possible for division from the farmstead; that the Applicants are willing to make improvement to the dangerous curve neighbors complained about; that the Applicants were willing to put in a buffer between one of the proposed subdivided lots and an already existing property; and how the subdivision would get their water. Although it does not state so anywhere in the decision, there were all issues that had been raised in the Public Informational Meetings held by the Planning Board about the Property and therefore, these are findings of fact.
A complete review of the record indicates that substantial evidence exists to support the Planning Board decision. The application is consistent with the Comprehensive Plan as the Staff Report from the Director of Planning indicated there was no funding available for the Town to purchase this property and the Town's efforts had focused elsewhere. The open space and the aesthetic value that the Town treasured remain preserved with the Applicant's Plan because a conservation easement will run along the front of the property, maintaining the view and the farmstead. The application is in compliance with the East Greenwich Zoning Ordinance as all other requirements are met besides the waiver for the extension of Hunter's Crossing. The development will cause no significant negative environmental impacts as the issue of drainage and the existing wetlands were resolved during the questioning of Mr. Moorehead. The proposed development will not create individual lots with any physical constraints to development. Building on those lots according to pertinent regulations and building standards would be impractical (as the Planning Board addressed in its decision). Finally, the proposed *Page 18 
development will have adequate and permanent physical access to a public street through the approval of the extension of Hunter's Crossing.
The Plaintiffs further contend that the Planning Board failed to make findings of fact consistent with R.I.G.L. § 45-23-62(b) regarding the criteria for a waiver being met and that there was no mention of the waiver criteria in the decision. In pertinent part, § 45-23-62(b) states:
 The only grounds for waivers and/or modifications are where the literal enforcement of one or more provisions of the regulations is impracticable and will exact undue hardship because of the peculiar conditions pertaining to the land in question or where waiver and/or modification is in the best interest of good planning practice and/or design as evidenced by consistency with the municipality's comprehensive plan and zoning ordinance.
Plaintiffs imply a waiver can only be granted when the literal enforcement of one or more provisions of the regulations is impracticable, in addition to either undue hardship or it is in the best interest of good planning practice. Plaintiffs have misconstrued the use of the words "and" and "or" in the regulation.
A literal reading gives the Planning Board the power to grant a waiver either where the literal enforcement of the Regulations would exact an undue hardship or where the waiver is in the best interest of good planning practices. The plain meaning of this provision allows the Planning Board to grant a waiver if it is in the best interest of good land development, even without a showing of undue hardship. This interpretation of the language was also followed in Rossiter v.Arsenault, 2006 R.I. Super. LEXIS 71, 16-18 (R.I.Super.Ct. 2006).
Although there is no mention specifically of the waiver criteria in the Decision of the Planning Board, § 45-23-62 (d) states that "[t]he planning board shall approve, approve with conditions or deny the request for either a waiver or modification. . . ." Here, the Planning *Page 19 
Board did approve the waiver, but with conditions, and lists out the ten conditions for approval. In addition, the Decision of the Planning Board does state that it bases its decision on its review of and consideration of the staff report and recommendations of the staff, review and consideration of the Exhibits made part of the record, personal knowledge, and testimony presented to the Board. Therefore, this Court concludes that there were sufficient findings of fact and evidence in the record to support the Planning Board's decision.
 Conclusions
After a review of the entire record, this Court finds that the Planning Board's granting of Master Plan approval was supported by substantial and legally competent evidence and was not in violation of any statutory or ordinance provisions. The Planning Board's decision also was not affected by error of law. Therefore, this Court upholds the decision of the Planning Board and denies the Plaintiffs' appeal.
[1] The Zoning Board is vested with jurisdiction to hear an appeal from a decision of the Planning Board pursuant to G.L. 1956 §45-23-57.
[2] The open space calculation for the cluster is based on the total area of lot 20, less the area of the farmstead and frontage lot (42.88 — 5.43, — 13.76 = 23.69 acres. 30% of 23.69 = 7.107 acres).
[3] After an appeal was filed a significant delay occurred while counsel was attempting to procure a transcript. This delayed the issuance of this Decision.
[4] R.I.G.L. § 45-23-60 states
 (a) All local regulations shall require that for all administrative, minor, and major development applications the approving authorities responsible for land development and subdivision review and approval shall address each of the general purposes stated in § 45-23-30 and make positive findings on the following standard provisions, as part of the proposed project's record prior to approval:
 (1) The proposed development is consistent with the comprehensive community plan and/or has satisfactorily addressed the issues where there may be inconsistencies;
 (2) The proposed development is in compliance with the standards and provisions of the municipality's zoning ordinance;
 (3) There will be no significant negative environmental impacts from the proposed development as shown on the final plan, with all required conditions for approval;
 (4) The subdivision, as proposed, will not result in the creation of individual lots with any physical constraints to development that building on those lots according to pertinent regulations and building standards would be impracticable. (See definition of Buildable lot). Lots with physical constraints to development may be created only if identified as permanent open space or permanently reserved for a public purpose on the approved, recorded plans; and
 (5) All proposed land developments and all subdivision lots have adequate and permanent physical access to a public street. Lot frontage on a public street without physical access shall not be considered in compliance with this requirement.
[5] Although Plaintiff's argument referenced five voting Planning Board members, the outcome of the Nov. 2, 2005 vote was four to two, so there were actually 6 voting Planning Board members.
[6] Mr. Holbrook stated "It's been in the family for 300 years, and I place a lot of value on property rights." (Tr. Nov. 2, 2005, p. 97, l. 15-17). Mr. Weiss stated "Mr. Holbrook makes a good point about property rights here." (Tr. Nov. 2, 2005, p 102, l. 17-19. Mr. Bishop stated "I tend to support the applicant, and I believe that the rights of the property owner here are the ones that have the highest precedence, for me." (Tr. Nov. 2, 2005, p. 103, l. 16-19)