William M. DAVIS d. b. a.
G.S.R. Landfill

v.

W. Edward WOOD, Director of Department of Environmental Management.

No. 81–448–M.P.

Supreme Court of Rhode Island.

April 14, 1982.

Rice, Dolan, Kiernan & Kershaw, Thomas C. Plunkett, Leonard A. Kiernan, Jr., Providence, for petitioner.

Sean O. Coffey, Chief Legal Counsel, Dept. of Environmental Management, Providence, for respondent.

Hodosh, Spinella & Angelone, William A. Poore, Providence, amicus curiae on behalf of the Town of Smithfield.

## OPINION

KELLEHER, Justice.

This is a statutory petition for certiorari issued under the relevant provisions of the Administrative Procedures Act (APA), G.L. 1956 (1977 Reenactment) § 42-35-16. This is the second time the petitioner, William M. Davis (Davis), has been before this tribunal in as many years; both appearances have been aimed at keeping open his solid-waste-management facility in the Glocester-Smithfield area of the state.

On September 22, 1977, Davis applied to the state's Department of Environmental Management (DEM) for renewal of his facility's license. On January 19, 1978, DEM denied his application, basing its decision on the grounds that inspections of the facility during the previous year had revealed numerous violations of the department's rules governing operation of solid-waste-management facilities and that Davis had failed to comply with an order issued by DEM's predecessor, the Department of Health.

Davis requested a hearing on the denial of the license, which hearing was held on three days during the summer and fall of 1978. On December 18, 1978, DEM issued its order and decision affirming the denial and ordering Davis to submit plans for closure of the facility. Davis sought review of this decision in the Superior Court under the APA, and there the trial justice found constitutional infirmities in DEM's licensing statute and in the hearing Davis received. We then reviewed that ruling on DEM's petition for certiorari, quashed the Superior Court judgment, and remanded the case for further findings by the trial justice. *See Davis v. Wood*, R.I., 427 A.2d 332 (1981).

It is the decision made on remand that is currently before us for review. Davis asserts several grounds for error in the Superior Court's ruling upholding DEM's decision to deny the license-renewal application, but we find merit in none of them.

Davis begins by arguing that the trial justice improperly refused to consider evidence of events that had occurred after the administrative order was issued on December 18, 1978. According to Davis, had such evidence been admitted, he could have demonstrated that he had expended thousands of dollars to upgrade the facility with the approval of the state; he further claims he could have adduced proof that DEM's posthearing inspections of his facility revealed minimal, if any, violations of the department's rules.[1] With such evidence before it, the court, Davis maintains, could then have exercised its equitable powers and have estopped the state from forcing closure of the facility.

■ We do not find ourselves in sympathy with Davis's views. In excluding evidence of what might have occurred subsequent to the posthearing order, the trial justice was properly limiting the scope of his inquiry. The provisions of the APA governing the judicial review of contested

---

1. Davis continued to operate his facility during the course of litigation by virtue of stays issued on both the trial and the appellate levels; thus, the department continued to inspect the operation despite its denial of the license-renewal application.

cases specifically mandates that the review "shall be confined to the record." General Laws 1956 (1977 Reenactment) § 42–35–15(f). The evidence that Davis sought to introduce was without doubt beyond the record of the administrative hearing since it related to events occurring subsequent to that hearing.

We also believe that the court acted properly in denying Davis's motion for leave to present additional evidence before the DEM. Through this motion, Davis had hoped to place on the administrative record the evidence mentioned above relating to posthearing expenditures and inspections. Under the relevant language of the APA, such a motion may be allowed if "it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency * * *." Section 42–35–15(e). At issue in the December 18, 1978 hearing was Davis's past performance in operating in accordance with DEM's rules; we fail to see how evidence of expenditures made by Davis after his license renewal was denied and evidence of substantial compliance with DEM's rules during the posthearing period were in any way material to issues raised in the hearing.

Davis also challenges DEM's actions on the grounds that the director of DEM, W. Edward Wood (Wood), is a commissioner of a corporation that owns a landfill in direct competition with Davis. He argues that the director's corporate affiliations create a clear conflict of interest with his public duties as DEM's director in regulating solid-waste-management facilities in the state. Although we are cognizant that unfairness may result when an administrator takes official actions that conflict with his personal or pecuniary interests, *see Marshall v. Jerrico, Inc.*, 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980), we need not dwell on the legal ramifications of such a conflict because none exists in the instant case.

The corporation with which Wood is associated is the Rhode Island Solid Waste Management Corporation. The General Assembly created this entity in 1974 as a "public instrumentality and agency exercising public and essential governmental functions" to provide for the "planning, design, construction, financing, management, ownership, operation and maintenance of * * * solid waste management facilities * * *." General Laws 1956 (1979 Reenactment) §§ 23–19–6 and 23–19–9(1). Among the stated policies of the legislation were that "solid waste management activities be conducted in an environmentally sound manner" and that "private industry be encouraged to continue playing a key role in the state's solid waste management programs." Section 23–19–3(4) and (5). At the time of its creation, the corporation's governing board was to consist of seven appointed commissioners, but legislative amendment in 1978 expanded the governing board from seven to nine commissioners, one of whom was to be the director of DEM or his designee. Public Laws 1978, ch. 305, § 5. It is specifically provided that the "[c]ommissioners shall receive no compensation for the performance of their duties * * *." Section 23–19–6.

Earlier, in *La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights*, R.I., 419 A.2d 274, 284 (1980), this court, after noting that the Fourteenth Amendment guarantees that a person shall not be tried before an administrative tribunal that is biased or otherwise indisposed from rendering a fair and impartial decision, cautioned anyone raising such an issue of the necessity of presenting evidence that overcomes the presumption of honesty and integrity in those serving as adjudicators. No such evidence was offered by Davis.

We see no way in which Wood's status as a commissioner of this state's Solid Waste Management Corporation creates any personal interest that conflicts with the impartial execution of his duties as director of DEM. His position on the commission simply presents no incentive for him to veer from the conscientious and objective discharge of his other official duties. Had Davis provided evidence of such incentive, a different result might follow, but the fact

that Wood holds these two public positions does not create even the slightest implication of impropriety in his department's treatment of Davis.

We assume Wood to be a man of conscience and intellectual discipline capable of judging a particular controversy fairly on the basis of its own facts. Nothing Davis has said causes us to believe that this assumption is ill founded.

The only remaining shot in Davis's blunderbuss appeal which merits any consideration is his claim that the DEM's refusal to renew his license amounted to an unconstitutional taking of his property. From our experience with the solid-waste-landfill controversies that have found their way to this court, we have learned that a properly maintained disposal facility can be a source of profitable income to the facility's owner and/or operator, whereas an improperly maintained facility poses a hazard to the safety and physical well being of many. The record of the administrative hearing clearly indicates that during the period Davis was operating pursuant to a license (1977), he consistently violated the regulatory agency's rules. The predicament in which Davis may find himself at this moment is all of his own making—a making but not a taking.

It should also be pointed out that at no time during this litigation did Davis make any effort to establish that the denial of his renewal application eliminates all beneficial use of his property. We think it incumbent that anyone who seeks to establish a taking must first establish the necessary evidentiary predicate and a good-faith effort to identify the issues, to articulate the points of argument, and to indicate the authoritative sources upon which he may rely as he attempts to meet the burden of persuasion in seeking to be compensated for an alleged economic loss. Although Davis at the Superior Court level asserted a highly generalized claim about a violation of his constitutional rights, he did not come close to raising the issue properly so that it would be ripe for our consideration. *See Milardo v. Coastal Resources Management Council,* R.I., 434 A.2d 266 (1981); *Dixon v. Royal Cab, Inc.,* R.I., 396 A.2d 930 (1979).

The petition for certiorari is denied, the writ is quashed, the papers are ordered returned to the Superior Court with our decision endorsed thereon, and all stays previously issued are dissolved.