DECISION
Before this Court is an appeal by Appellant Intrica Group, LLC from a decision of the Town of Foster Zoning Board of Review, sitting in its capacity as the Planning Board of Appeal ("Board of Appeal"). The Board of Appeal reversed a decision of the Foster Planning Board that granted preliminary plan approval of Appellant's minor subdivision application and remanded the matter to the Planning Board for further consideration. For the reasons set forth in this Decision, this Court denies this appeal and affirms the decision of the Board of Appeal.
 I FACTS AND TRAVEL
Appellant is the record owner of a parcel of real property located along Cucumber Hill Road and Harrington Road in Foster, Rhode Island (the "Property"). The Property, designated as Assessor's Plat 4, Lot 87, comprises approximately twenty-six acres.
On October 26, 2005, Appellant filed an application with the Foster Planning Department to subdivide the Property into five lots. (Intrica Group, LLC, Foster Planning Department Application for Land Development, Oct. 26, 2005.) Under the Town of Foster Subdivision Regulations, subdivisions that "consist of five (5) or fewer *Page 2 
units or lots" qualify as a "[m]inor subdivision." See Town of Foster Land Development and Subdivision Regulations § V. Appellant's application was thus deemed a "minor subdivision," which, in accordance with R.I. Gen. Laws § 45-23-38, necessitated two stages of Planning Board approval: (1) preliminary plan approval; and (2) final plan approval. See
R.I. Gen. Laws § 45-23-38(a); see also Town of Foster Land Development and Subdivision Regulations § V ("Minor subdivisions consist of two stages, a preliminary review stage and a final review stage.").
On or about September 14, 2006, Appellant filed an application with the Planning Department for preliminary plan review of the proposed subdivision. The Planning Board scheduled a hearing on the application for October 18, 2006; however, the Board did not issue, or require Appellant to issue, notice of the impending hearing to abutting property owners. At the hearing, the Planning Board identified a number of issues with the proposed subdivision. In particular, the Planning Board expressed concern regarding: (1) the design and location of the proposed septic systems; (2) the number of variable sand filter systems and their proximity to wells; (3) non-compliance with wetland setback requirements; (4) encroachment on the necessary frontage setback by a pre-existing barn; and (5) the overall feasibility of subdividing the land into five plats. (Foster Planning Bd. Mtg. Mins., Oct. 18, 2006.) In light of these concerns, the Planning Board did not vote on Appellant's preliminary plan application. (Id.) Rather, the Planning Board requested Appellant to address these issues at a subsequent hearing. (Id.)
On February 21, 2007, the Planning Board held a second preliminary plan review hearing on Appellant's proposed subdivision application. Once again, neither the Planning Board nor Appellant provided notice of the hearing to abutting property owners. *Page 3 
During the hearing, Appellant sought to address the issues identified by the Planning Board at the October 18, 2006 hearing. (Foster Planning Bd. Mtg. Mins., Feb. 21, 2007.) Notably, Appellant attested to the safety and suitability of the proposed septic and sand filter systems. (Id. at ¶¶ 1-4.) According to Appellant, these systems complied with wetland setback requirements, met the Department of Environmental Management's spatial and design specifications, and did not encroach upon wells. (Id.) Nevertheless, Appellant explained that to ensure safe operation of these systems, a provision would be included in the deeds of the subdivided plats requiring property owners to conduct routine inspections and maintenance of them. (Id. at ¶ 4.) Additionally, Appellant addressed the frontage setback encroachment by the pre-existing barn. (Id. at ¶ 7.) Appellant conceded that the barn did not comply with the setback requirement of the zoning ordinance, but assured the Planning Board that it would seek the requisite dimensional variance from the Zoning Board of Review to ensure that the barn would satisfy the Town's zoning requirements. (Id.) Appellant further stated that if the Zoning Board denied its application for the dimensional variance, it would remove the barn so as to comply with the setback requirement. (Id.)
During the hearing, the Planning Board once again raised a number of issues with Appellant's proposed subdivision. First, the Planning Board noted the existence of an additional and unaccounted-for water flow on the property that might qualify as a stream. (Id. at ¶ 2.) The Planning Board observed that Appellant had not performed a wetland delineation of the property; however, if such a stream were present, it might require additional setback limitations. (Id.) Second, the record reveals that "the [Planning] [B]oard was not happy with the number of lots squeezed into the property, and would like *Page 4 
to cut the number of lots back." (Id. at ¶ 5.) The Planning Board also expressed concern that "[t]he development [. . .] [would] put[ ] a lot of environmental pressure on a sensitive area." (Id.) Third, the Planning Board opined that although the proposed septic and sand filter systems complied with the setback requirements for wells, "there[ ] [is] no buffer or margin of safety." (Id. at ¶ 3.) The record indicates that while these systems were found to be "within the regulations," the "[Planning] Board expressed that they were not comfortable." (Id. at ¶ 6.) Finally, the Planning Board noted that the pre-existing barn may have historic preservation protection status in the future. (Id. at ¶ 7.) According to the Planning Board, the Foster Preservation Society indicated that the Town of Foster would like to keep the barn. (Id.)
Notwithstanding these issues, the Planning Board voted to approve Appellant's preliminary plan, subject to four conditions.[1]
(Id. at ¶ 13.) The Planning Board did not memorialize its approval in a written decision; rather, the Planning Board included it in the February 21, 2007 meeting minutes. Curiously, however, the minutes are markedly devoid of any of the statutorily required findings — set forth in R.I. Gen Laws § 45-23-60 — for minor subdivision approval. The Planning Board approved the February 21, 2007 meeting minutes on April 18, 2007, thereby formally ratifying the approval of Appellant's preliminary plan.
On April 23, 2007, seven abutting property owners ("Intervenors") filed a timely appeal with the Board of Appeal, challenging the Planning Board's decision to *Page 5 
conditionally approve Appellant's preliminary plan. They listed fourteen grounds for their appeal.[2] *Page 6 
On June 13, 2007, the Board of Appeal convened a hearing to consider the Intervenors' appeal. During the hearing, the Board received a plethora of testimony from interested witness regarding purported infirmities in the Planning Board's decision. (See Foster Bd. of App. Hr'g Tr., June 13, 2007.) This testimony largely echoed the fourteen assignments of error set forth in the Intervenors' appeal, although, at times, witnesses introduced new evidence into the record. (See, e.g.,id. at 32-33.) In response, Appellant contended that the Planning Board's decision was not affected by prejudicial procedural or substantive error. (Id. at 47-48, 54-60.) Further, Appellant maintained that the Planning Board's decision was supported by the weight of the evidence. (Id.) At the conclusion of the hearing, the Board of Appeal continued the matter to a later hearing date so it could review the hearing testimony. (Id. at 69-71.) The Board afforded the Intervenors and Appellant an opportunity to submit post-hearing legal memorandum in the interim. (Id. at 71.)
On July 11, 2007, the Board of Appeal reconvened to deliberate and decide the Intervenors' pending appeal. At the outset of the hearing, Foster Town Solicitor, John J. Bevilaqua, instructed that, although parties introduced new evidence during the June 13, 2007 hearing, the Board of Appeal's review was limited to the record of the original Planning Board hearing and its findings based on that record. (Foster Bd. of App. Hr'g Tr. at 5-6, July 11, 2007.)
Upon further consideration of the Planning Board's record, the Board of Appeal voted unanimously to reverse the Planning Board's approval of Appellant's preliminary *Page 7 
plan. (Id. at 17-19.) In so holding, the Board of Appeal identified five errors in the Planning Board's decision: (1) the lack of any testimony, evidence, or discussion that the plan was consistent with the Foster Comprehensive Plan; (2) the lack of support in the record to suggest that the proposed subdivision would not cause an adverse environmental impact "when the evidence show[ed] that the Planning Board recognized issues involving a local brook, streams, retaining walls, steep slopes, wetland edges, and with some septic systems[;]" (3) the absence of a proper assessment of wetland setback requirements by the Planning Board, as evidenced by the plan's failure to identify and account for all streams on the Property; (4) the lack of certification by the Department of Environmental Management that the septic systems identified on the plan were more than two hundred feet from the wetlands; and (5) the failure of the plan to comply with the zoning ordinance because it necessitated dimensional variances.[3] (Foster Bd. of App., Decision, Sept. 13, 2007); (Foster Bd. of App. Hr'g Tr. at 6-13, July 11, 2007). In light of these shortcomings, the Board of Appeal concluded that the Planning Board's decision contained clear substantive errors and was not supported by the weight of evidence in the record. (Foster Bd. of App., Decision, Sept. 13, 2007.) Accordingly, the Board of Appeal remanded the matter to the Planning Board for further consideration. (Id.)
On September 13, 2007, the Board of Appeal recorded its decision in the Foster Land Evidence Records. (See Foster Bd. of App., Decision, Sept. 13, 2007.) On September 21, 2007, Appellant filed an appeal to this Court challenging the legality and *Page 8 
propriety of that decision.[4] This Court has jurisdiction over Appellant's timely appeal pursuant to R.I. Gen. Laws § 45-23-71.
 II STANDARD OF REVIEW
Rhode Island General Laws § 45-23-71 provides this Court with the specific authority to review decisions of a municipal zoning board of review sitting as the board of appeal from decisions of the municipal planning board. In conducting this review, this Court "shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact." R.I. Gen. Laws § 45-23-71(c). When a decision of the board of appeal is properly before this Court, the following standard of review applies:
 The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance; *Page 9 
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I. Gen. Laws § 45-23-71(c). Judicial review of a board of appeal's decision is not de novo, and thus, this Court is not permitted to "consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Munroe v. Townof East Greenwich, 733 A.2d 703, 705 (R.I. 1999) (citingKirby v. Planning Bd. of Review of Middletown,634 A.2d 285, 290 (R.I. 1993)). Rather, this Court's review is "`confined to a search of the record to ascertain whether the [planning] board's decision rests upon `competent evidence' or is affected by an error of law.'" Id. (quoting Kirby,634 A.2d at 290).
 III LAW AND ANALYSIS
On appeal, Appellant contends that the Board of Appeal's decision to reverse the Planning Board's approval of the preliminary subdivision plan is rendered infirm by procedural and substantive errors. The Court observes that Appellant raises three assignments of error that warrant consideration.[5] First, Appellant avers that the Board of *Page 10 
Appeal erred in considering the Intervenors' appeal because it failed to adequately state the allegations of error. Second, Appellant maintains that the Board of Appeal "committed an unlawful procedure" by allowing a former Foster Town Solicitor to argue in opposition to the preliminary subdivision plan. Third, Appellant contends that the Board of Appeal's decision was erroneous in view of the reliable, probative and substantial evidence in the record.
In response, the Town and the Intervenors contend that the Board of Appeal correctly reversed the Planning Board's approval of Appellant's preliminary subdivision plan. Moreover, they contend that remand to the Planning Board is warranted in light of the many substantive deficiencies in the Planning Board's decision.
 A Sufficiency of Intervenors' Allegations of Error before the Board of Appeal
As an initial matter, Appellant argues that the Intervenors' appeal of the Planning Board decision to the Board of Appeal failed to adequately state the allegation of errors. According to Appellant, "[o]n this basis alone, the appeal should have been dismissed for ambiguity and failure to comply with the appellate requirements of the General Laws [. . .]." (Intrica Group, LLC's Memorandum of Law, Nov. 28, 2008, at 8.) Finding Appellant's characterization of the Intervenors' appeal to be woefully inaccurate, this Court strongly disagrees. *Page 11 
The procedure for filing an appeal to a board of appeal from a decision of a planning board is codified in R.I. Gen. Laws § 45-23-67. Pertinent to this matter, this provision requires that an "appeal shall be in writing and state clearly and unambiguously the issues or decision which is being appealed, the reasons for the appeal, and the relief sought."See R.I. Gen. Laws § 45-23-67(b).
The record reflects that, on April 23, 2007, Intervenors filed a timely appeal with the Board of Appeal challenging the Planning Board's approval of Appellant's preliminary subdivision plan. (Application for Appeal, April 23, 2007.) They filed this appeal on a standard form, ostensibly issued by the Town of Foster. (Id.) On the form, the Intervenors provided an accurate description of the subject property and set forth that "[t]he undersigned hereby applies to the Zoning Board of Review for a[n] appeal [. . .] from preliminary approval by Planning Board of subdivision into 5 lots." (Id.) Importantly, the Intervenors supplemented this standard appeal form with a detailed statement assigning fourteen specific errors to the Planning Board's decision. (See Appeal from Foster Planning Board Preliminary Approval for Subdivision of Plat 4[,] Lot 87, supra n. 2); (see also Intrica Group, LLC's Memorandum of Law, Nov. 28, 2008, at 5 ("As grounds for their appeal, the [Intervenors] set forth fourteen (14) issues attached to their appeal application.")). Upon review of the Intervenors' appeal and the attached assignments of error, this Court is satisfied that the Intervenors wholly complied with the requirements of R.I. Gen. Laws § 45-23-67. Appellant's argument to the contrary is patently frivolous. *Page 12 
 B Involvement of Former Town Solicitor
Next, Appellant contends that the Board of Appeal "committed an unlawful procedure" by allowing a former Foster Town Solicitor, Bradford Gorham, to argue in opposition to the preliminary subdivision plan.[6] In support of this claim, Appellant proffers an unsubstantiated allegation that Mr. Gorham served as the Foster Town Solicitor less than a year prior to the Board of Appeal hearing. According to Appellant, "[t]his situation created an unfair advantage for [Intervenors] [. . .] [which] constituted a possible violation of Ethic's [sic] Commission rules and impaired the [Board of Appeal's] ability to objectively and impartially hear the appeal." (Intrica Group, LLC's Memorandum of Law, Nov. 28, 2008, at 11.) This Court disagrees.
It is well settled that when an administrative entity carries out a quasi-judicial function, guarantees of due process demand that litigants are afforded a fair and impartial hearing. SeeChamplin's Realty Assocs. v. Tikoian,989 A.2d 427, 443 (R.I. 2010); see also Davis v. Wood,444 A.2d 190, 192 (R.I. 1982) ("[T]he Fourteenth Amendment guarantees that a person shall not be tried before an administrative tribunal that is biased or otherwise indisposed from rendering a fair and impartial decision [. . .]."). When a reviewing court is called upon to review the fairness and impartiality of an administrative hearing, the tribunal is afforded a "`presumption of honesty and integrity.'" See Champlin's RealtyAssocs., 989 A.2d at 443 (quoting Davis, 44 A.2d at 192). This *Page 13 
presumption may be overcome, however, through the proper submission of evidence that "`the same person(s) involved in building one party's adversarial case is also adjudicating the determinative issues' or if `other special circumstances render the risk of unfairness intolerably high.'" Id. (alteration in original) (quoting Kent County Water Auth. v. State Dep't of Health,723 A.2d 1132, 1137 (R.I. 1999)).
As an initial matter, this Court is compelled to observe that Appellant's assignment of error is not properly before this Court. Indeed, despite petitioning the Board for clarification as to Mr. Gorham's participation in the proceedings, Appellant did not ask any members of the Board of Appeal to recuse themselves and failed to raise any formal objection to his involvement or the fairness of the hearing as a result thereof.[7] Rather, only after Appellant received an adverse judgment from the Board of Appeal did it purport to question the objectivity of the Board members and the fairness of the hearing. As Appellant did not properly raise this issue before the Board of Appeal in the first instance, this Court deems it to be waived. See State v. Merced, 933 A.2d 172, 174 (R.I. 2007) ("[A]llegations of error [. . .] are considered waived if they were not effectively raised [below], despite their articulation at the appellate level.")[8] *Page 14 
Even assuming, arguendo, that Appellant preserved its assignment of error, this Court finds it to be imprudent and unavailing. Appellant's allegation of unfairness is predicated primarily on the assumption that the Board of Appeal was unduly influenced by, or afforded unfair consideration to, the contentions of Mr. Gorham by virtue of the fact that he previously served as the Foster Town Solicitor. This Court finds this assumption to be wholly unfounded. Indeed, Appellant has not identified — nor has this Court unearthed — even a scintilla of evidence in the record to corroborate any such alleged impropriety. Rather, the record reveals that the Board of Appeal made a laudable effort to discharge its duties with the utmost impartiality. Moreover, it is the duty of individual members of the Board of Appeal to recuse themselves in the first instance if they cannot be fair. See Ryan v. RomanCatholic Bishop of Providence, 941 A.2d 174, 185 (R.I. 2008) ("It is a well-recognized principle that judicial officers are duty-bound to recuse themselves if they are `unable to render a fair or an impartial decision in a particular case.'"). This Court thus must presume, absent any evidence to the contrary, that their failure to do so reflects their determination that they harbored no bias toward Mr. Gorham or that his involvement otherwise did not compromise their ability to adjudicate fairly. To the extent that Appellant contends that it was deprived of a fair and impartial proceeding before the Board of Appeal, therefore, this Court concludes that such argument is entirely without merit.[9] *Page 15 
 C Sufficiency of the Board of Appeal's Decision
Finally, Appellant argues that the Board of Appeal's decision to reverse the Planning Board's approval of the preliminary subdivision plan was erroneous in view of the reliable, probative and substantial evidence in the record. In support of this contention, Appellant proffers a litany of conclusory assertions which, in effect, are markedly devoid of any substantive or meaningful discussion of the Board of Appeal's decision. Specifically, Appellant's challenge pertaining to the sufficiency of the Board's decision is as follows:
 The Appeals Board disregarded the well[-]reasoned and thoughtful decision of the Planning Board and substituted their own judgment in overturning the Planning Board decision to approve the subdivision plan and determining that the Planning Board made "clear and substantive errors" and that the Planning Board decision "was not supported by the weight of the evidence found in the record." The slim statements offered by the Appeals Board simply mention the potential for environmental impacts and possible septic concerns as the basis for their decision to overturn the Planning Board decision. The decision of the Appeals Board was arbitrary or capricious or characterized by abuse of discretion or clearly [an] unwarranted exercise of discretion by their complete disregard of the Planning Board's findings of facts on the same issues raised before the Appeals Board and using the appeal hearing to *Page 16 
effectively reconsider the subdivision in contravention of [Appellant's] rights.
(Intrica Group, LLC's Memorandum of Law, Nov. 28, 2008, at 11-12.)
Upon review of this assignment of error, it is readily apparent that Appellant has failed to challenge any of the specific grounds upon which the Board of Appeal based its decision. Instead, Appellant invites this Court to assess independently the Board of Appeal's findings and address any potential shortcomings suasponte. This Court declines Appellant's invitation.
It is well settled that "summarily listing issues for appellate review, `without meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.'" Town of Coventry v. Baird Properties,LLC, ___ A.3d ___, 2011 WL 365216, *3 (R.I. 2011) (quotingWilkinson v. State Crime Lab. Comm'n,788 A.2d 1129, 1131 n. 1 (R.I 2002)). As Appellant has not meaningfully discussed, or even identified, any substantive errors in the Board of Appeal's decision, this Court finds that Appellant has waived its argument as to the alleged insufficiency of that decision. This Court thus declines to address this aspect of Appellant's appeal, which again it finds to be patently frivolous.
 CONCLUSION
For the reasons set forth in this Decision, this Court denies Appellant's appeal and affirms the decision of the Board of Appeal. In accordance with the directive of the Board of Appeal, Appellant's subdivision application is remanded to the Planning Board *Page 17 
for further consideration.[10] Counsel shall confer and submit to this Court forthwith for entry an agreed upon form of order and judgment that is consistent with this Decision. *Page 18 
[EDITORS' NOTE: THIS PAGE CONTAINED FOOTNOTES.]
[1] The Planning Board imposed the following conditions: "(1) [b]arn variance[;] (2) [d]eed restriction for contracts on septic systems and generator systems[;] (3) [n]ame change from Harrington Estates [to Cucumber Hill Estates][;] [and] (4) [r]equest [. . .] for sample deeds before final approval[.]" (Id.)
[2] The Intervenors assigned the following as error in the Planning Board's decision:
 1. Stream running from pond not delineated on survey/wetlands maps. Stream is actually present and is shown on Soil Survey Book Map 47. Septic systems [are] within 200' of this stream [. . .] [and] [a]lso within 200' of overflow stream in southeast corner of dam.
 2. Septic system within 200' of Dead Cow Brook.
 3. Harrington Pond outlet pipe lowed by 4'±. Alteration of fresh water wetland without DEM permission.
 4. Original shore line of Harrington Pond within 200' of septic system.
 5. Wetland edges not verified by DEM, resulting in inability of Planning Board to determine 200' Foster Zoning provision. DEM will verify wetlands if requested by Board.
 6. DEM found proposed grade "not considered realistic" and construction would therefore go beyond "[l]imit of disturbance."
 7. Construction of drive to lot E would require retaining wall within wetland jurisdiction edge, removal of guard rail and unsafe (limited visibility) onto Cucumber Hill Road.
 8. No provision for preservation of barn on property within Moosup Valley Historical District.
 9. Aerial photos submitted by developer inaccurately show boundary line with adjoining property.
 10. Septic systems proposed are tightly spaced and require high maintenance, due to forcing 5 lots in subdivision.
 11. Intensity of development will put pressure on environmentally sensitive area.
 12. Pursuant to G.L. 45-23-38(e)[,] the Planning Board should have classified the application as [ ] a "Major Subdivision" since the lots are not in compliance with the Zoning Ordinance (re: location of barn, subject to hearing on May 9, 2007) and the lots planned have numerous physical restrictions.
 13. No notice of the consideration of the subdivision application by the Planning Board was given to adjoining owners, despite a request that notice be given.
 14. At its April, 18, 2007 meeting[,] the Planning Board refused to allow discussion by adjoining owners prior to its approval of the decision to give preliminary plat approval.
(See Appeal from Foster Planning Board Preliminary Approval for Subdivision of Plat 4[,] Lot 87.)
[3] Although individual members of the Board of Appeal initially addressed these errors during their deliberations, the Board of Appeal unanimously voted to incorporate them by reference as the grounds upon which to reverse the Planning Board's decision. (Foster Bd. of App. Hr'g Tr. at 16-18, July 11, 2007.)
[4] Although Appellant initially failed to afford notice of its appeal to the Intervenors or any other abutting property owners, one of the Intervenors filed an entry of appearance on January 16, 2008. (See Entry of Appearance and Motion to Dismiss, Jan. 16, 2008.) On July 2, 2008, a hearing justice of the Superior Court issued an order confirming the propriety of the Intervenor's involvement. See Intrica Group, LLC v. Town ofFoster Zoning Bd. of Review, C.A. No. PC 07-4995, at ¶ 1 (R.I. Sup. Ct., filed July 2, 2008) (Order) (Hurst, J.).
On January 15, 2009, the Intervenor filed a "Memorandum of Law on Behalf of Adjoining Landowners/Intervenors" with this Court. (See Memorandum of Law on Behalf of Adjoining Landowners/Intervenors, Jan. 15, 2009.) The Town opted to join in this memorandum of law, with the consent of all parties, in lieu of filing a separate memorandum. (See
Stipulation, May 19, 2009.)
[5] Appellant raises two additional assignments of error: (1) the Intervenors' contention that the proposed plan should be classified as a "major subdivision" rather than a "minor subdivision" was not timely filed by virtue of the fact that an Administrative Officer classified the proposal as a "minor subdivision" at a pre-application meeting in 2005; and (2) the Intervenors were not entitled to notice of the subdivision proposal because it was classified as a "minor subdivision." (Intrica Group, LLC's Memorandum of Law, Nov. 28, 2008, at 9-10.) Although the Intervenors' appeal to the Board of Appeal did raise, interalia, issues pertaining to the classification of the proposed subdivision and the requirements for notice as to the proposal, neither of these issues factored into the Board of Appeal's decision. Rather, the Board of Appeal based its decision on purported errors and insufficient findings of the Planning Board with respect to Appellant's preliminary plan. As the issues raised by Appellant have no bearing on the propriety and sufficiency of the Board of Appeal's decision, this Court finds them to be inconsequential to the matter sub judice, and thus declines to address them.
[6] The record reflects that Mr. Gorham, as an abutter of the subject property, was one of the parties who filed an appeal from the Planning Board's decision. (Application for Appeal, April 23, 2007). Moreover, during the June 13, 2007 hearing, Mr. Gorham stated that he represented one of the other Intervenors in the appeal. (Foster Bd. of App. Hr'g Tr. at 32, June 13, 2007).
[7] The Court observes that the record contains only the following dialogue with respect to Mr. Gorham's involvement in the proceedings:
 [APPELLANT]: Is Mr. Gorham representing [Intervenor] Lombardi? I have to ask the question.
 MR. LOMBARDI: Yes.
 [TOWN SOLICITOR]: It's a good question.
 [APPELLANT]: Is he?
 MR. LOMBARDI: Yes, yes, he is.
 [APPELLANT]: Thank you.
(See Foster Bd. of App. Hr'g Tr., June 13, 2007, at 32.)
[8] This Court acknowledges that our Supreme Court has "not explicitly held that the raise-or-waive doctrine applies to administrative proceedings." East BayCmty. Dev. Corp. v. Zoning Bd. of Review,901 A.2d 1136, 1153 (R.I. 2006). Nevertheless, it is readily apparent to this Court that the policy implications underlying the raise-or-waive rule — the necessity of affording an opposing party and/or administrative tribunal an opportunity to address any objections raised as well as the importance of developing a sufficient record for review — applies equally to the Superior Court's appellate review of an administrative proceeding.
[9] This Court likewise finds baseless Appellant's half-hearted claim that the Board of Appeal committed error by allowing Mr. Gorham to appear before it as a party to the appeal and as counsel for one of the Intervenors because he had served as Town Solicitor within a year before his appearance before the tribunal. Notwithstanding the inflammatory nature of this allegation, Appellant provides no evidence to support its assertion of an ethical violation by Mr. Gorham (and the Board of Appeal by extension) nor does it cite to any provision of the Rhode Island Code of Ethics that Mr. Gorham and/or the Board of Appeal has violated. Indeed, Appellant alleges only apossible violation of the Code, and the record is devoid of any evidence as to when Mr. Gorham served as Town Solicitor. This allegation, therefore, fails on its face. Moreover, the Ethics Commission, and not this Court, is the proper arbiter of such controversies. See R.I. Gen. Laws § 36-14-13.
[10] In any subsequent review of Appellant's subdivision application, the Planning Board should be mindful of the pertinent subdivision review provisions codified in the Rhode Island Land Development and Subdivision Enabling Act, R.I. Gen. Laws §§ 43-23-25 et seq.
Notably, R.I. Gen. Laws § 45-23-60(a) requires authorities responsible for subdivision review to make the following findings — on the record — prior to any approval of the proposed subdivision plan:
 (1) The proposed development is consistent with the comprehensive community plan and/or has satisfactorily addressed the issues where there may be inconsistencies;
 (2) The proposed development is in compliance with the standards and provisions of the municipality's zoning ordinance;
 (3) There will be no significant negative environmental impacts from the proposed development as shown on the final plan, with all required conditions for approval;
 (4) The subdivision, as proposed, will not result in the creation of individual lots with any physical constraints to development that building on those lots according to pertinent regulations and building standards would be impracticable [. . .][;] and
 (5) All proposed land developments and all subdivision lots have adequate and permanent physical access to a public street. Lot frontage on a public street without physical access shall not be considered in compliance with this requirement.
See R.I. Gen. Laws. § 45-23-60(a). All "findings of must be supported by legally competent evidence on the record which discloses the nature and character of the observations upon which the fact finders acted." Id. § 45-23-60(b). It is not enough, therefore, for the Planning Board to simply recite a litany of these statutory findings; it must make each of these findings by vote of a majority of the body, explain its rationale for each finding, and record its votes and findings as a matter of public record. Seeid. §§ 45-23-38; 45-23-60.
If the Planning Board is unable to make the findings required by § 45-23-60, it "may reassign a proposed minor [subdivision] project to major [subdivision] review."Id. at § 45-23-38(e) (emphasis added). The procedures for major subdivision review are set forth in R.I. Gen. Laws §§ 45-23-40 to -43.
In the event a proposed subdivision requires a variance from the zoning ordinance, R.I. Gen. Laws § 45-23-61(a)(1) provides that "the applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval for the first approval stage for the proposed [subdivision], which may be simultaneous,
then obtain conditional zoning board relief, andthen return to the planning board for subsequent required approval[ ] [of the subdivision]."Id. § 45-23-61(a)(1) (emphasis added).
Finally, it should be noted that the Foster Subdivision Regulations mandate that "[a]butters within 200' of any boundaries of proposed lots must be notified by certified mail [. . .]" of a proposed minor subdivision. See Town of Foster Land Development and Subdivision Regulations § V(A).
 *Page 1